2004-NMCA-066

92 P.3d 41

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Reymundo Carlos GARCIA,**
**Defendant–Appellant.**

**No. 23,353.**

Court of Appeals of New Mexico.

April 5, 2004.

Certiorari Granted, No. 28,631, May 4, 2004.

Patricia A. Madrid, Attorney General, Santa Fe, M. Victoria Wilson, Assistant Attorney General, Albuquerque, for Appellee.

John B. Bigelow, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

ALARID, J.

{1} Defendant, Reymundo Carlos Garcia, appeals from his convictions for being a felon in possession of a firearm, contrary to NMSA 1978, § 30–7–16 (1981, as amended through 1987) and for possession of an alcoholic beverage in an open container while in a motor vehicle, contrary to NMSA 1978, § 66–8–138 (1989). We reverse Defendant's conviction for being a felon in possession of a firearm on the ground that the evidence was insufficient to establish beyond a reasonable doubt that Defendant was in possession of a firearm; we affirm Defendant's conviction for possession of an alcoholic beverage in an open container.

## BACKGROUND

{2} At around midnight on the evening of April 25, 2001, Sgt. Jason Hatch and Officer John Emmons of the Bosque Farms Police Department and Deputy Donald Derrick of the Valencia County Sheriff's Department were taking a coffee break at a convenience store. They observed a car slowly drive through the parking lot. Defendant was seated in the front passenger's seat of the car, a 1986, two-door Buick Regal sedan. Sgt. Hatch became suspicious because the car displayed a "dealer demonstration tag"

while being driven after normal business hours. Sgt. Hatch followed in his patrol car. Officer Emmons and Deputy Derrick followed in separate vehicles. Sgt. Hatch observed the subject car swerve across the white "fog line," almost hitting the curb. Sgt. Hatch engaged his emergency equipment. The subject car pulled into a gas station, stopping near one of the gas pumps.

{3} Before Sgt. Hatch's car had come to a full stop, Defendant left the subject car and faced to the rear with the right side of his body "slouched down towards the side of the vehicle." Defendant looked at Sgt. Hatch, giving him a "thousand yard stare . . . . [k]ind of a blank look . . . almost as if . . . just looking through me as if I'm not there." Because of the way in which Defendant was leaning against the car, Sgt. Hatch could not see the right side of Defendant's body. Sgt. Hatch left his patrol car, drew his gun holding it at "a low ready position," and ordered Defendant back into the car. Defendant did not immediately comply and Sgt. Hatch again ordered Defendant to get back into the car.

{4} When Defendant was again seated in the car, Sgt. Hatch approached the driver and requested a driver's license, registration, and proof of insurance. By this time Officer Emmons and Deputy Derrick had arrived. The driver had a New Mexico I.D. card, but no driver's license, registration, or proof of insurance. After learning that the driver had no license, Sgt. Hatch directed Officer Emmons to identify the passenger and determine whether the passenger had a valid driver's license. Defendant told Officer Emmons that he was "Ray[—]Reymundo." Officer Emmons ran a check on Defendant by radio and the dispatcher identified Defendant as Reymundo Garcia.

{5} As Officer Emmons was writing out citations to the driver, Sgt. Hatch stood at the rear of the car on the passenger's side. He observed a handgun in a holster on the floor of the car protruding from beneath the rear of the passenger seat. The occupants were ordered from the car and were frisked and handcuffed. Sgt. Hatch observed a one inch by five inch by one-quarter inch clip of bullets lying in the "palm" of the front pas-

senger seat, which was badly worn and covered with a towel or other cloth. Next to the gun on the floor was a partially empty bottle of beer. The officers seized the gun, which was loaded, and the extra clip. Deputy Derrick, who was familiar with the type of gun, unloaded it. The beer bottle was not seized. Defendant denied any knowledge of the handgun, explaining to the officers that because of prior felony convictions he was not allowed to be around firearms. Defendant admitted that he had been drinking in the car. Because Defendant had admitted to a prior felony, the officers ran his name through records a second time and were informed by dispatch that Defendant's record showed a prior felony conviction. Defendant was charged with concealing identity, an open container violation, and being a felon in possession of a firearm. In addition to various Motor Vehicle Code violations, the driver was charged with negligent use of a firearm.

{6} Defendant's case was tried to the court without a jury. Neither occupant of the car testified at trial. The State called Sgt. Hatch and Deputy Derrick as its only witnesses. The State offered no evidence as to who actually owned the car or how the driver and Defendant came to be in it. There was no evidence of the nature of the relationship of the driver and Defendant. The State stipulated that no fingerprints were found on the gun. Defense counsel stipulated that Defendant was a convicted felon. Defendant objected on hearsay grounds to Sgt. Hatch's testimony as to what Defendant had told Officer Emmons. The district court ruled that Sgt. Hatch's testimony as to Defendant's statements to Officer Emmons would be admitted "just to establish why he's doing what he did." Toward the end of the State's direct examination of Sgt. Hatch, the State informed the trial court that it would not proceed on the concealing identity charge. At the conclusion of the State's case, the trial court denied Defendant's motion for a directed verdict on the remaining charges. Defendant did not put on any evidence. The trial court found Defendant guilty of possession of a firearm by a felon and possession of an open container containing an alcoholic beverage in a motor vehicle.

## DISCUSSION

### 1. Sufficiency of the Evidence of Possession of a Firearm

■ {7} Section 30–7–16(A) makes it unlawful for a felon to "possess" a firearm. The State concedes that it did not prove that Defendant had the gun on his person. The State relies on a theory of "constructive" possession: i.e., that Defendant knew the gun was present and exercised control over it. *See State v. Morales,* 2002–NMCA–052, ¶¶ 28–29, 132 N.M. 146, 45 P.3d 406 (discussing constructive possession in the context of a prosecution for possession of heroin); *see also* UJI 14–130 NMRA 2004. We focus on the sufficiency of the evidence establishing that Defendant had actual knowledge of the presence of the firearm and exercised control over it.

■ {8} Sufficiency-of-the-evidence claims in criminal cases are reviewed under the following standards:

> [W]e review the record, marshaling all evidence favorable to [the] trial court's findings. If evidence is in conflict, or credibility is at issue, we accept any interpretation of the evidence that supports the trial court's findings, provided that such a view of the evidence is not inherently improbable. We determine whether the evidence supports any conceivable set of rational deductions and inferences that logically leads to the finding in question. We must be satisfied that the evidence was sufficient to establish the facts essential to conviction with the level of certainty required by the applicable burden of proof. To support a conviction under a beyond a reasonable doubt standard, the evidence and inferences drawn from that evidence must be sufficiently compelling so that a hypothetical reasonable factfinder could have reached a subjective state of near certitude of the guilt of the accused.

*State v. Wynn,* 2001–NMCA–020, ¶ 5, 130 N.M. 381, 24 P.3d 816 (internal citations and quotation marks omitted).

■ {9} In conducting sufficiency-of-the-evidence review in a criminal case, we are constitutionally required to take into account the heightened, beyond-a-reasonable-doubt burden of proof: evidence that is sufficient to allow a rational juror to make a finding adverse to a defendant under a preponderance-of-the-evidence standard will not necessarily suffice to allow a rational factfinder to reach the subjective state of certitude required by the beyond-a-reasonable-doubt standard. *State v. Garcia,* 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (noting that constitutional review of the sufficiency of the evidence to support a criminal conviction requires appellate court to consider the heightened level of certitude required by proof beyond a reasonable doubt).

■ {10} The requirement of proof beyond a reasonable doubt derives from the distinction between "demonstrative" and "moral" evidence. *Victor v. Nebraska,* 511 U.S. 1, 10, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994):

> Demonstrative evidence has for its subject abstract and necessary truths, or the unchangeable relations of ideas. Moral evidence has for its subject the real but contingent truths and connections, which take place among things actually existing . . . .

*Id.* (quoting 1 *Works of James Wilson* 518 (J. Andrews ed. 1896) (ellipsis in quoted material and internal quotation marks omitted)). Proof beyond a reasonable doubt is equivalent to proof "to a moral certainty," and refers to the highest degree of confidence with which an historical or physical fact can be known. *Id.* at 11–12, 114 S.Ct. 1239; Steve Sheppard, *The Metamorphoses of Reasonable Doubt: How Changes in the Burden of Proof Have Weakened the Presumption of Innocence,* 78 Notre Dame L.Rev. 1165, 1178–80 (2003).

■ {11} The requirement of proof beyond a reasonable doubt "is a prime instrument for reducing the risk of convictions resting on factual error." *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

> There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is

reduced as to him by the process of placing on the other party the burden of ... persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt. Due process commands that no man shall lose his liberty unless the Government has borne the burden of ... convincing the factfinder of his guilt. To this end, the reasonable-doubt standard is indispensable, for it impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.

*Id.* at 364, 90 S.Ct. 1068 (citations and internal quotation marks omitted; ellipses in quotation). A trial court "has the right, and it is its duty," to enter judgment for a defendant when the evidence is insufficient to establish the defendant's guilt beyond a reasonable doubt. *State v. Tipton,* 57 N.M. 681, 682, 262 P.2d 378 (1953).

{12} Applying the standards set out above, we are persuaded that the State's evidence would have permitted a rational factfinder to rule out beyond a reasonable doubt everyone but Defendant and the driver as the source of the handgun found under Defendant's seat. The State's problem is that its own uncontradicted evidence establishes that the driver had roughly equal access with Defendant to the location where the gun was found. Thus, the State's own evidence supports the competing theory that the driver, not Defendant, placed the gun behind Defendant's seat. *Cf. Morales,* 2002–NMCA–052, ¶ 30, 132 N.M. 146, 45 P.3d 406.

{13} Cases involving prosecutions for unlawful possession or transportation of a weapon or contraband when the defendant had non-exclusive access to the location where the weapon or contraband was found underscore the difficulty of conceptualizing reasonable doubt and of articulating standards for deciding when a reasonable doubt is present as a matter of law. *See, e.g., State v. Sizemore,* 115 N.M. 753, 858 P.2d 420 (Ct.App.1993); *see also Smith v. State,* 145 Md.App. 400, 805 A.2d 1108 (2000) (reversing conviction for knowingly transporting an illegal handgun with four judges joining in plurality opinion, three judges joining in an opinion concurring in the result and five judges joining in three separate dissenting opinions), *rev'd by* 374 Md. 527, 823 A.2d 664 (2003) (reversing Court of Special Appeals and affirming conviction with five judges concurring and one judge dissenting); *see also Branch v. Commonwealth* 2002 WL 31688803 (Va.Ct.App.2002) (en banc) (affirming defendant's conviction for unlawful possession of a firearm by a felon on rehearing en banc with two judges dissenting; vacating prior opinion by a unanimous panel which reversed defendant's conviction on the ground of insufficient evidence that the defendant constructively possessed handgun found in vehicle). Non exclusive access cases require us to decide whether the evidence adduced by the State in addition to mere proof of non exclusive access was sufficient to elevate what would otherwise be an inferential flip of a coin into proof beyond a reasonable doubt. *See State v. Brietag,* 108 N.M. 368, 371, 772 P.2d 898, 901 (Ct.App.1989) (discussing requirement in non-exclusive access cases of "additional facts" to support an inference of constructive possessions); *see also* Charles R. Nesson, *Reasonable Doubt and Permissive Inferences: The Value of Complexity,* 92 Harv. L.Rev. 1187, 1192–93 (1979) (discussing "Prisoner's case" hypothetical in which there is an absolute certainty that one of multiple defendants is innocent; contrasting scenario in which state's best case is "purely statistical" with cases involving issues of credibility or motive).

{14} Not every imaginable doubt is a reasonable doubt. *Victor,* 511 U.S. at 1, 114 S.Ct. 1239. Here, however, the State's own evidence, viewed in the light most favorable to the State, immediately suggests a competing hypothesis that is inconsistent with guilt: i.e., that the driver placed the gun behind the seat. This alternative hypothesis was sufficiently likely in the light of normal human experience as to necessarily give rise to a reasonable doubt in the absence of evidence more strongly linking Defendant to the gun or more convincingly ruling out the driver as the source of the gun. *See State v. Johnson,* 839 So.2d 1247, 1253 (La.Ct.App. 2003) (observing that "when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is suffi-

ciently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under *Jackson v. Virginia*"); *see also* Lawrence M. Solan, *Refocusing the Burden of Proof in Criminal Cases: Some Doubt About Reasonable Doubt,* 78 Tex. L.Rev. 105, 133 (1999) (observing that in a criminal case the government must accomplish the interrelated tasks of creating a model of events that is consistent with the evidence and that supports its case while also demonstrating the unreasonableness of any competing models of events consistent with innocence).

{15} The State argues that the location of the gun behind Defendant's seat permits an inference of control based upon Defendant's closer physical proximity to the gun. Of course a roughly equal inference would attribute possession to the driver based upon the inference that the driver of a car controls the objects that are introduced into the car. *Cf. Smith,* 823 A.2d at 677–82. The fact that these inferences are so easily manipulable demonstrates why they cannot of themselves establish constructive possession to the level of certitude required by proof beyond a reasonable doubt. The State argues various other inferences of guilt may be drawn from the facts of Defendant's aggressive behavior, his admission that he had been drinking and the fact that a beer bottle was found on the floor behind the passenger's seat next to the gun. We are satisfied that the evidence and reasonable inferences drawn from the evidence, viewed in the light most favorable to the State, would support a strong suspicion that Defendant was in constructive possession of the gun, and might well support a finding of guilt under a mere preponderance-of-the-evidence standard. However, in a criminal case the evidence and any inferences from the evidence must establish the existence of the elements of the offense to a level of confidence amounting to near certitude. We are persuaded that the State's evidence and the inferences from that evidence were insufficient to eliminate a reasonable doubt that the driver placed the gun behind Defendant's seat.

{16} We emphasize that our conclusion that the evidence of constructive possession was insufficient is not based on disbelief of the State's witnesses. The trial court, as factfinder, was entitled to accept the testimony of the State's witnesses as both truthful and accurate. *See State v. Till,* 78 N.M. 255, 430 P.2d 752 (1967). Nor are we basing our holding that the evidence was insufficient on Defendant's denial of any connection to the handgun, as reported by the State's witness. The trial court was entitled to disbelieve Defendant's denial of any connection to the gun. *Wynn,* 2001–NMCA–020, ¶ 6, 130 N.M. 381, 24 P.3d 816. Lastly, we are not basing our decision on qualitative distinctions between "direct" and "circumstantial" evidence. In *State v. Bell,* 90 N.M. 134, 560 P.2d 925(1977), our Supreme Court emphasized that the traditional distinction between direct and circumstantial evidence in evaluating the sufficiency of the evidence had been disapproved. The sufficiency of the evidence justifying the denial of a motion for a directed verdict of acquittal is measured by the same standard regardless of whether the State relies on direct or circumstantial evidence. *Id.* at 137, 560 P.2d at 928. As we noted in *State v. Sanchez,* sufficiency of the evidence review requires us to determine whether on the evidence viewed in the light most favorable to the State a factfinder reasonably could find that evidence is "inconsistent with every *reasonable* hypothesis of innocence." 98 N.M. 428, 430, 649 P.2d 496, 498 (Ct.App.1982) (emphasis added). Where the evidence viewed most favorably to the State *necessarily* supports a *reasonable* hypothesis of innocence, the State, by definition, has failed to prove its case beyond a reasonable doubt, and this is so regardless of whether the State has relied on direct or circumstantial evidence or a combination of both:

> It is true that "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt," but it is equally true that if a hypothesis of innocence is sufficiently reasonable and sufficiently strong, then a reasonable trier of fact *must* necessarily entertain a reasonable doubt about guilt.

*United States v. Bell*, 678 F.2d 547, 550 (5th Cir.1982) (Anderson, J., specially concurring) (citation omitted).

{17} The Dissent asserts that "the issue for this Court to resolve upon review is not whether it was 'sufficiently likely' that the driver put the gun under Defendant's seat, but whether, viewing the evidence in the light most favorable to the prosecution and considering the reasonable inferences to be drawn from the undisputed facts, 'any rational trier of fact could have found the essential elements of the crime established beyond a reasonable doubt.'" Dissent ¶ 36. The Dissent's statement of the standard for determining the sufficiency of the evidence is largely circular: evidence is sufficient if it allows a rational factfinder to find a fact beyond a reasonable doubt ... a rational factfinder is a person who will not find a fact established beyond a reasonable doubt unless he or she is presented with sufficient evidence ... the presence of a reasonable doubt means that a rational factfinder has not been provided sufficient evidence. We agree with the Dissent that due process is not violated by a conviction that is supported by substantial evidence, made by a rational factfinder drawing reasonable inferences to the exclusion of a reasonable doubt of innocence. Stating the standard is the easy part; the difficulty comes in deciding and explaining why the evidence was or was not "substantial", why the factfinding was or was not "rational," why inferences necessary to sustaining the conviction were or were not "reasonable," and ultimately, whether or not the State's evidence precludes any reasonable doubt of innocence.

{18} As we have pointed out before, "beyond a reasonable doubt" refers to the highest level of confidence with which an historical or physical fact can be known. We are confident that the Dissent would agree that evidence that two convicted felons were found in a car with a gun on the floor behind the front seat cannot, without more, support a conviction of either occupant for illegal possession. On such limited facts a rational factfinder would not claim to know with near certitude who controlled the gun anymore than he or she would claim to know whether heads or tails will come up on the next flip of a coin, and a conviction based on such limited evidence would be overturned, notwithstanding the broad latitude traditionally afforded factfinders in drawing inferences from the evidence.

{19} Here, the State's case was not quite as bare-bones as the two-men-in-a-car-with-a-gun hypothetical described above. The State's case was substantially strengthened in comparison to the two-men-in-a-car hypothetical by evidence that a spare clip of bullets was found in the palm of the passenger's seat. This evidence would support a reasonable inference that Defendant was aware that a gun was present in the car. However, knowledge and control are conjunctive requirements for constructive possession. In the present case, the sufficiency of the evidence supporting a finding of constructive possession ultimately depends upon the sufficiency of the evidence establishing that Defendant exercised control over the gun.

{20} Whether a factfinder is rational in making a finding depends in part on the level of confidence the factfinder claims to have in the finding. On a given quantum of evidence it may be rational to assert that one knows a fact to be more likely than not, yet on the same evidence it can be irrational to assert that one knows that fact with near certainty. As we noted above, if this were a civil case and the State merely had to prove that it was more likely than not that Defendant exercised control over the gun, it would be much more difficult to disagree with the Dissent's assertion that the record contains sufficient evidence of constructive possession. But this is a criminal case, and we must decide whether, on the State's evidence, a trier of fact would be acting rationally in maintaining that he knows with a level of confidence amounting to near certitude that Defendant exercised control over the gun. "[A] properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt, and the same may be said of a trial judge sitting as a jury." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We are persuaded that this is just such a case.

{21} It is possible that our disagreement with the Dissent stems from differing views of what it means to "exercise control over" an object. *See* UJI 14–130. As the Dissent observes, two or more persons can constructively possess an item of property, and therefore it was open to the State to attempt to prove that both the driver of the car and Defendant were in constructive possession of the gun. *See* UJI 14–130 ("Two or more people can have possession of an object at the same time."). However, on the record before us, we do not perceive how analyzing the evidence under a theory of joint constructive possession assists the State in demonstrating that Defendant's conviction is supported by sufficient evidence of control. Analyzing the evidence under a theory of joint constructive possession merely underscores the insufficiency of the evidence as to either occupant. If the Dissent means to suggest that a hitchhiker or other passenger may be presumed to exercise control over any piece of property that is within reach within the passenger compartment of a car in which he is a guest, we categorically reject any such presumption. *See* UJI 14–130 (stating that a jury may not find possession merely because a person is in the vicinity of an object or is aware of its location); *Sizemore*, 115 N.M. at 758, 858 P.2d at 425 (observing that when persons other than the defendant have equal access to location where contraband is located, possession may not be inferred solely from the defendant's access).

## 2. Section 66–8–138 Violation

{22} Defendant argues that his convictions were based on evidence obtained in the course of an unconstitutional warrantless search of the car. Our conclusion that the evidence was insufficient to support Defendant's conviction for possession of a firearm by a felon renders this point moot as to that conviction. Therefore, we consider Defendant's claims under the Fourth Amendment to the United States Constitution and Article II, § 10 of the New Mexico Constitution only as they may affect the conviction for possession of an alcoholic beverage in an open container while in a motor vehicle.

{23} A ruling on a motion to suppress presents a mixed question of fact and law. *State v. Vandenberg*, 2003–NMSC–030, ¶ 17, 134 N.M. 566, 81 P.3d 19. We review the trial court's findings of historical fact under a substantial evidence standard; we review the trial court's application of the law to those facts under a de novo standard. *Id.*

{24} Prior to trial, Defendant filed a motion to suppress evidence, arguing that the warrantless entry into the car violated Defendant's rights under the Fourth Amendment and Article II, § 10. Defendant referred the trial court to *State v. Gomez*, 1997–NMSC–006, 122 N.M. 777, 932 P.2d 1. The parties agreed to conduct the evidentiary hearing on Defendant's motion at the same time as the trial on the merits.

{25} Sgt. Hatch testified that at the time the gun was seized, both the driver and Defendant were out of the car and had been "secured." He conceded that he had not requested consent to search the car, that there were three officers present, and that there was no reason why someone could not have obtained a search warrant. Sgt. Hatch testified to his belief that the seizure of the gun was justified because it was in plain view. Defendant argued that the trial court should suppress "all evidence following the search of the car" due to the failure of the officers to obtain a warrant and the absence of exigent circumstances.

{26} The State responded that the gun and magazine were in plain view and that because of safety concerns it was reasonable for the officers to retrieve the gun. The State initially disclaimed any reliance upon a theory of exigent circumstances, whereupon the trial court interjected "Well you better be claiming exigent circumstances, or you're going to lose this motion." The trial court denied the motion to suppress, ruling that "I'm going to find that there is [sic] exigent circumstances because I think in the nature of things, a loaded gun even though the suspects are handcuffed, creates a situation where something could happen, and that gun should be secured."

{27} On appeal, Defendant maintains his argument that the facts do not establish exigent circumstances for a warrantless seizure. The State argues that the seizure of the gun was not a warrantless seizure of evidence, but rather a protective sweep. The State argues that the circumstances characterized by the trial court as "exigent" suffice to establish that the arresting officers reasonably feared that Defendant might be armed and dangerous and justified securing the weapon while the investigatory stop proceeded. While ultimately we agree with the State, we first address a serious misstatement of the law of search and seizure contained in the State's brief.

{28} The State asserts that the seizure of the gun was justified because the presence of a firearm in an automobile during a late-night traffic stop automatically supplies grounds to believe that the subject is armed *and dangerous*. We do not agree. To justify a frisk of a person or a protective sweep of an automobile on officer safety grounds, the officer must be confronted with circumstances that support a reasonable suspicion that the subject is *both* armed *and* dangerous. *Vandenberg*, 2003–NMSC–030, ¶ 22, 134 N.M. 566, 81 P.3d 19. Our Supreme Court emphasized in *Vandenberg* that this is not an either-or test; both prongs must be satisfied. *Id.* The right to bear arms "for security and defense, . . . and for other lawful purposes" is guaranteed by Article II, § 6 of the New Mexico Constitution. New Mexico law permits adults to carry a loaded handgun "in a private automobile or other private means of conveyance, for lawful protection of the person's or another's person or property." NMSA 1978, § 30–7–2(A)(2) (2001). We presume that the Legislature, in enacting Section 30–7–2(A)(2), was aware of the inherent characteristics of firearms, but nevertheless concluded that lawfully carried firearms do not present an unreasonable risk of harm to persons in the vicinity of the firearm. In a state such as New Mexico, where the carrying of a firearm in a car is entirely lawful, it would be anomalous to treat the mere presence of a firearm in an automobile as supporting a reasonable suspicion that the occupants are inclined to harm an officer in the course of a routine traffic stop. *Cf. State v. Arredondo*, 1997–NMCA–081, ¶¶ 17–18, 123 N.M. 628, 944 P.2d 276 (discussing circumstances justifying a protective search of a vehicle for weapons). We have previously recognized that a motorist's acknowledgment that he is armed does not of itself justify the further detention of the motorist, a search for the weapon, the seizure of a weapon, or "any further infringement on [the motorist's] . . . freedoms of movement and privacy." *City of Albuquerque v. Haywood*, 1998–NMCA–029, ¶ 17, 124 N.M. 661, 954 P.2d 93. We therefore reject the State's argument that the presence of a firearm in an automobile automatically supports a reasonable suspicion that the occupants will use the firearm to harm the officer.

{29} Our holding takes into account the United States Supreme Court's decision in *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). In *Adams* the Supreme Court observed that a frisk for weapons may be reasonable even though applicable state law authorizes the carrying of the weapon. *Id.* at 146, 92 S.Ct. 1921. We do not understand *Adams* as creating an exception to the rule that a *Terry* frisk must be justified by a reasonable belief that the subject is *both* armed *and* dangerous. Rather, *Adams* merely recognizes that an officer may entertain a reasonable belief that a subject is dangerous even though the subject is not violating state law by possessing a firearm.[1]

{30} Notwithstanding our rejection of the per se rule proposed by the State, we conclude that in the present case, the circumstances facing the officers supported a reasonable suspicion that Defendant might pose a danger to the officers. We find particularly persuasive Defendant's failure when confronted by an officer with his gun drawn to immediately comply with the officer's instructions to get back into the car. This behavior on its face suggests aggressiveness

---

1. The record indicates that the officers did not discover that Defendant was a convicted felon until after they had seized the gun. Thus, at the point that they seized the gun, they had no reason to believe that it was unlawful for Defendant to possess a firearm.

and rashness. The arresting officer testified, albeit somewhat inartfully, that "[t]hrough my experience and training as well as knowledge of other incidents that have happened in police departments or the sheriff's department, similar things have happened where gunfire is exchanged resulting in someone being injured." [2]

{31} Defendant points out that by the time the gun was seized, both the driver and Defendant had been frisked, handcuffed and detained away from the car. Defendant argues that under these circumstances no reasonable officer could have believed that the driver or Defendant continued to present a threat to officer safety, and therefore officer safety did not justify the entry into the car to seize the gun.

{32} An officer's conduct during an investigatory detention must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Here, the officers' observation of the gun coupled with the prior observation of Defendant's aggressive behavior gave rise to a reasonable suspicion that Defendant was both armed *and dangerous.* At that point retrieving the gun and unloading it clearly was a constitutionally-reasonable response to the situation facing the officers. However, as long as Defendant and the driver remained in the car, an officer reaching in to retrieve the gun would have been vulnerable to attack. By restraining Defendant and the driver away from the car, the officers reduced the risk of being attacked while securing the gun. We are persuaded that the officers'. conduct was "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.*

{33} Defendant also argues that we should reverse the denial of his motion to suppress because the officers believed that they could seize the gun inside the car simply because it was in plain view from outside the car. We agree with Defendant that the officers' understanding of the law was erroneous: even where an object is in plain view inside a car, a warrantless entry into the car to seize the object is valid only where the entry is justified by exigent circumstances or some other exception to the warrant requirement. *State v. Jones,* 2002–NMCA–019, ¶ 15, 131 N.M. 586, 40 P.3d 1030. However, we may uphold a search or seizure if the facts known to the officer conducting the search or seizure, viewed objectively, would provide valid constitutional grounds for the officer's actions even though the officer subjectively relied on a legally-insufficient theory. *State v. Vargas,* 120 N.M. 416, 418, 902 P.2d 571, 573 (Ct.App.1995). Because the facts known to the officers established a reasonable suspicion that Defendant was both armed and dangerous—thereby justifying a protective seizure of the gun—the officers' subjective reliance on an erroneous justification does not invalidate the entry into the car to secure the gun.

{34} The entry into the car to seize the gun is important to the Section 66–8–138 conviction because it was in the course of seizing the gun that the arresting officer observed the open beer bottle on the floor of the car next to the gun and it apparently was in response to the recovery of the gun and the discovery of the beer bottle that Defendant admitted that he had been drinking. At trial, the trial court explained that it was basing Defendant's conviction on the open container charge solely on Defendant's admission as recounted by the arresting officer. In view of our conclusion that the warrantless entry into the car to seize the gun was supported by exigent circumstances—the officers' reasonable suspicion that Defendant was armed and dangerous—we hold that Defendant's admission that he had been drink-

---

2. We have previously recognized that the State bears the burden of demonstrating the relevance of an officer's training and experience to search and seizure issues. *State v. Duran,* 2003–NMCA–112, ¶ 19, 134 N.M. 367, 76 P.3d 1124. Here, Defendant did not object to the officer's testimony on the ground that the State had not laid an adequate foundation for the admission of testimony linking the officer's training and experience to his awareness of officer safety concerns. Our reliance on the officer's conclusory assertion of experience and training in the present case should not be understood as a general endorsement of boilerplate or conclusory invocations of experience and training or officer safety concerns.

ing was the fruit of a lawful entry into the car. We therefore reject Defendant's claim that his Section 66–8–138 conviction was based upon evidence obtained in violation of his constitutional rights.

## CONCLUSION

{35} We reverse Defendant's conviction for possession of a firearm by a felon; we affirm Defendant's conviction for possession of an alcoholic beverage in an open container while in a motor vehicle. We remand for entry of an amended judgment consistent with this opinion.

{36} IT IS SO ORDERED.

CASTILLO J., concurs.

ROBINSON, J., dissenting.

ROBINSON, Judge (concurring in part and dissenting in part).

{37} I concur in part and dissent in part. I agree with the Majority that the officers' search of the car was proper and that Defendant's conviction for possession of an open container of alcohol in a motor vehicle should be affirmed. I also consider Defendant's chain of custody claim to be without merit. However, I cannot concur in the Majority's reversal, on the basis of insufficient evidence, of Defendant's conviction for possession of a firearm by a felon. Because I believe the Majority has inappropriately reweighed the evidence and then substituted its judgment for that of the trial court, I must respectfully dissent.

{38} An appellate court reviews the sufficiency of the evidence under a substantial evidence standard. *State v. Sutphin,* 107 N.M. 126, 130–31, 753 P.2d 1314, 1318–19 (1988). In making this determination, a reviewing court "does not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict." *Id.* at 131, 753 P.2d at 1319. Rather, we must determine whether, after reviewing the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences to uphold the verdict, any rational trier of fact could have found the essential elements of the crime established

beyond a reasonable doubt. *State v. Sanders,* 117 N.M. 452, 456, 872 P.2d 870, 874 (1994) (relying upon *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Furthermore, "[a]n appellate court does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence." *Sutphin,* 107 N.M. at 130–31, 753 P.2d 1314, 1318–19. "The fact that another district court could have drawn different inferences on the same facts does not mean this district court's findings were not supported by substantial evidence." *State v. Jason L.,* 2000–NMSC–018, ¶ 10, 129 N.M. 119, 2 P.3d 856.

{39} To establish the essential elements of the crime, the State was required to prove that Defendant possessed a firearm and that he was a felon. Section 30–7–16(A); *see State v. Haddenham,* 110 N.M. 149, 155–56, 793 P.2d 279, 285–86 (Ct.App.1990). Defendant stipulated that he was a convicted felon, so the only element before the trial court was whether Defendant was in constructive possession of the gun found in the car. In New Mexico, constructive possession is defined by UJI 14–130 in the following manner: "[e]ven if the object is not in [a person's] physical presence, he [or she] is in possession if he [or she] knows what it is and where it is and he [or she] exercises control over it." The jury instruction also provides that "[t]wo or more people can have possession of an object at the same time." UJI 14–130; *accord State v. Muniz,* 110 N.M. 799, 802, 800 P.2d 734, 737 (Ct.App.1990) ("Even if someone else had knowledge of [the object] and exercised some control over it, defendant could also have had sufficient knowledge and control to be in constructive possession.").

{40} The direct evidence before the trial court, presented by the undisputed testimony of the police officers, was that upon being stopped, Defendant jumped out of the passenger side of the car and slouched down at the side of the car, concealing his right side and hand from the officers; did not readily obey the officer's instructions to get back in the car; and initially gave the officers a false name. The gun and its holster were protruding from under the back of Defendant's

seat in the car, and Defendant had been sitting upon a magazine clip containing ammunition for the gun in question. The clip was in plain view on Defendant's seat after he was removed from the car for reasons of officer safety. After an officer found the loaded gun and an open bottle of beer under Defendant's seat, Defendant admitted to the officer that he had been drinking in the car. The officer testified that the bottle of beer was directly next to the gun under Defendant's seat. At the close of testimony, the trial court concluded beyond a reasonable doubt that Defendant had constructive possession of the gun, based on inferences drawn from the circumstances of Defendant's sitting on the magazine and the location of the gun under Defendant's seat. The trial court found Defendant guilty of possession of a firearm by a felon and also guilty of possession of an alcoholic beverage in a motor vehicle.

{41} Notwithstanding these facts, however, the Majority has arrived at a different conclusion, deciding that it was "sufficiently likely" the driver may have placed the gun under the passenger seat. Majority Op. ¶ 14. The Majority also appears to fault the State for offering no evidence to explain the ownership of the car, the relationship of its occupants to one another, or how they came to be in the car, *id.* ¶ 6, although these facts are not elements of the crime of felon in possession of a firearm. The Majority reversed Defendant's conviction because it has persuaded itself that "the State's evidence and the inferences from that evidence were insufficient to eliminate a reasonable doubt that the driver placed the gun behind Defendant's seat." *Id.* ¶ 15.

{42} In so holding the Majority has abandoned our appellate standard of review. Instead, it has created a conflicting supposition, weighed this newly created supposition against the facts and inferences drawn by the proper factfinder-the trial court-and then concluded that this supposition created reasonable doubt. However, the issue for this Court to resolve upon review is not whether it was "sufficiently likely" that the driver put the gun under Defendant's seat, but whether, viewing the evidence in the light most favorable to the prosecution and considering the reasonable inferences to be drawn from the undisputed facts, any rational trier of fact could have found the essential elements of the crime established beyond a reasonable doubt. *See Sanders,* 117 N.M. at 456, 872 P.2d at 874. Because it was rational for the trial court to have found beyond a reasonable doubt that Defendant had constructive possession of the gun, I cannot concur with the contrary holding of the Majority. Thus, I respectfully dissent.