177 P.3d 536 (2008)
2008-NMCA-026
STATE of New Mexico, Plaintiff-Appellee,
v.
Kamil SEWELL, Defendant-Appellant.
No. 26,742.
Court of Appeals of New Mexico.
January 10, 2008.
Certiorari Granted February 19, 2008.
*537 Gary K. King, Attorney General, Santa Fe, NM, Joel Jacobsen, Assistant Attorney General, Albuquerque, NM, for Appellee.
McGarry Law Office, Kathleen McGarry, Glorieta, NM, for Appellant.
Certiorari Granted, No. 30,897, February 19, 2008.

OPINION
KENNEDY, Judge.
{1} Defendant Kamil Sewell appeals from his convictions for trafficking in cocaine and child abuse, having reserved in his conditional plea agreement the issue of whether his motion to suppress evidence was properly *538 denied by the district court. At issue is the propriety of a traffic stop and the expansion of the scope of police action during its course. We reverse the district court.
FACTS AND PROCEDURAL HISTORY
{2} On the night of April 9, 2004, Detective Dan Porter was working undercover around Central Avenue and Pennsylvania Avenue in Albuquerque, New Mexico. He observed a woman he knew to be a prostitute trying to flag down cars. A tan truck pulled up, and after a short conversation, the woman got in the truck. The truck pulled away, and made several unusual stops, executing erratic maneuvers and U-turns that Detective Porter took to be evasive moves commonly used to defeat police surveillance in such circumstances. Not fooled, and with his target in sight, Porter observed the truck stop next to a pay phone. The woman got out of the truck and made a short phone call while the truck waited. The truck went on to a convenience store at Indiana and Zuni, where the woman again left the truck, and went into the store for a few minutes before re-entering the truck. The truck then pulled into a shopping plaza and stopped. The woman and the driver just sat there.
{3} Detective Porter testified that prostitution and drug sales are activities frequently undertaken in conjunction with each other. He also testified that most people who pick up prostitutes are looking for sex, not drugs, but he had seen the phone she used on this night used before in conjunction with drug buys. He thought that this case might involve such a context of commercial drug activity, since it was not uncommon in his experience for a prostitute to make phone calls for that purpose.
{4} After a few minutes, a car arrived in the parking lot. The woman Detective Porter believed to be a prostitute got out of the truck and into the car. Detective Porter could not see what was going on inside, as the windows had mirror tinting on them. Less than a minute later, the woman got out of the car and returned to the truck, which immediately left the lot, as did the car. Detective Porter, who had been on the radio with other members of his team throughout his surveillance, arranged to have both vehicles stopped "for reasonable suspicion of drug trafficking." The car was then stopped by marked police units. Detective Porter remained some distance away, and did not have any contact with events transpiring at that scene.
{5} When the car was stopped by Officer Borunda and his training officer,[1] Defendant was driving. He was asked for his driver's license. A woman named Collette Wise[2] was in the passenger seat, and two small children were in the back seat. The training officer asked Wise to get out of the car, followed by Officer Borunda asking Defendant to exit the car. Defendant was patted down for weapons, Defendant and Wise were moved to the rear of the car, and the children were taken from the car to be with Wise. Nothing illegal was found at this time. About this time, both Defendant and Wise were read their Miranda warnings when they were standing together. Wise wound up sitting on the curb with the children. She was asked if there was anything in the car, and she responded that there was not. Someone apparently gave consent for what Officer Borunda agreed was a "complete, thorough search of the interior of the car," that took about three minutes. No contraband was found. Although no one was formally arrested, because "there was a traffic stop and an investigation going on," neither Defendant nor Wise were free to leave because the officers "wanted to investigate the matter more." Following the search, Officer Borunda testified that Defendant and Wise were not released because based on Detective Porter's "observation, [that] there were some illegal narcotics activity taking place."
{6} Both Defendant and Wise were detained at the back of the car during the search. After the search, they were separated. Officer Borunda testified that during the encounter, although Defendant did not, Wise *539 appeared nervous. Wise glanced at the officer and then at Defendant in a way that made the officer think she was "afraid of something" that he "needed to investigate." He took her aside, and when he asked her what they "were doing in the parking lot over there." She responded that she could not talk in front of Defendant. The officer told Wise that she was safe and again asked what was going on, at which time she said that she and Defendant "were making a crack deal." When the officer asked her if she had any drugs on her person or in the car, she said she had some in her bra, and produced it. Defendant was then arrested.
{7} Defendant moved to suppress the drugs, maintaining the illegality of the stop of his car. After the district court denied the motion, Defendant entered a conditional plea, which has brought the case before us.
DISCUSSION
{8} "Generally, the denial of a motion to suppress evidence will not be overturned on appeal if the denial is supported by substantial evidence." State v. Hernandez, 1997-NMCA-006, ¶ 18, 122 N.M. 809, 932 P.2d 499. However, when we review issues involving constitutional rights, such as search and seizure cases, which are mixed questions of law and fact, our review is de novo. Id.; State v. Williams, 2006-NMCA-062, ¶ 12, 139 N.M. 578, 136 P.3d 579 (internal quotation marks and citation omitted).
Standing
{9} The State contests whether Defendant has standing to contest incursions by the police into Wise's brassiere. During the suppression hearing, the State conceded that if Defendant was merely contesting the stop and subsequent detention, he would have standing. On appeal, the State concedes that "Defendant would be entitled to suppression under the `fruit of the poisonous tree' doctrine," if the initial stop were found to be illegal "and it was further established that the police seized the drugs from [] Wise's bra in exploitation of that initial illegality."
{10} In Hernandez, this Court held that "a defendant may have standing to challenge evidence seized from a third party if the search leading to the seizure of that evidence is an exploitation of the defendant's own unlawful arrest." 1997-NMCA-006, ¶ 17, 122 N.M. 809, 932 P.2d 499. If there was an unlawful detention and arrest of the defendant, the evidence seized must be suppressed, as fruit of the unlawful arrest and detention. Id. ¶¶ 16-17. This Court further held that the evidence was the "fruit of the poisonous tree" based on the past police illegalities. Id. ¶ 17.
{11} Defendant had a reasonable expectation of privacy in not being detained beyond the time necessary for the officer to assuage any articulable suspicion and complete an investigation. United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). To the extent that the detention of both Defendant and Wise was unreasonable, Defendant has standing to complain about a subsequent search of Wise to the extent that it constituted an exploitation of the illegal detention. Hernandez, 1997-NMCA-006, ¶ 17, 122 N.M. 809, 932 P.2d 499. The State does not dispute that if further detention of Defendant and Wise became unreasonable after the car had been searched, Defendant frisked, and no evidence had been found, that Defendant has standing to challenge the legality of the detention and seek suppression of the evidence that flowed from it.
{12} Next, we engage in a dual inquiry: first, whether the officer's action was justified at the inception of the stop, State v. Neal, 2007-NMSC-043, ¶¶ 18-19, 142 N.M. 176, 164 P.3d 57 (internal quotation marks and citation omitted), and second, "whether the officer's actions during the investigatory detention were reasonably related in scope to the circumstances that initially justified the stop." State v. Rubio, 2006-NMCA-067, ¶ 11, 139 N.M. 612, 136 P.3d 1022.
We Assume That the Initial Stop Was Justified
{13} This case does not involve a traffic stop, as Officer Borunda stated, but an investigatory detention. State v. Wilson, 2007 NMCA-111, ¶ 18, 142 N.M. 737, 169 P.3d 1184 ("An investigatory detention occurs when an officer briefly detains and investigates a person based on reasonable suspicion *540 of criminal activity."). Officer Borunda testified that Defendant's car was not pulled over because of observed illegal behavior, rather, it was pulled over based on Detective Porter's suspicions.
{14} Defendant assumes in his brief that the stop of his car was reasonable, arguing only that the scope of the stop exceeded its initial basis. Detective Porter's observation of a person who to him was a "known" prostitute getting into and out of the truck and then Defendant's car, gave him reason to believe, based on his experience, that a drug transaction had occurred. Detective Porter requested that Defendant's car be pulled over based on a course of conduct that Detective Porter regarded as consistent with previous circumstances he had observed in which prostitutes had assisted in the procurement of drugs.
{15} Detective Porter did not participate in the stop, or the searches of Defendant or the car. He intentionally had no direct contact with Defendant or events transpiring around Defendant's car. Despite arguing the reasonableness of the stop at trial, Defendant does not raise in his brief the issues of Officer Borunda's constitutional entitlement to initiate and proceed with the stop based on Detective Porter's request to effect the stop, nor does he seek to develop an argument from Officer Borunda's testimony that there was no reason apart from Detective Porter's request to stop Defendant. We thus proceed on the assumption that the stop was justified, while noting potential questions may exist about the validity of the stop of the car that remain unanswered. State v. Eder, 103 N.M. 211, 215, 704 P.2d 465, 469 (Ct.App. 1985) (noting that issues that are not briefed are deemed abandoned); State v. Gonzales, 111 N.M. 590, 594, 808 P.2d 40, 44 (Ct.App. 1991).
{16} Disposing of the question of reasonable suspicion and justification for the stop, we look at the circumstances of the continued detention of Defendant and Wise to determine if the degree of police intrusion based on that suspicion was reasonable.
Justifiable Scope of the Detention
{17} In stopping a car to investigate suspected drug-related crime, legitimate roadside police activity is designed to quickly verify or dispel officers' suspicions. State v. Robbs, 2006-NMCA-061, ¶¶ 23-24, 139 N.M. 569, 136 P.3d 570. Such a detention is a seizure, which is subject to review for reasonableness under the Fourth Amendment. State v. Werner, 117 N.M. 315, 317, 871 P.2d 971, 973 (1994); Williams, 2006-NMCA-062, ¶¶ 10-11, 139 N.M. 578, 136 P.3d 579. "The Fourth Amendment is not, of course, a guarantee against all searches and seizures, but only against unreasonable searches and seizures." Sharpe, 470 U.S. at 682, 105 S.Ct. 1568 (emphasis in original). The activities undertaken by the police are limited: they must be brief, and reasonably related to the circumstances that initially justified the stop. Werner, 117 N.M. at 317, 871 P.2d at 973. "[W]e consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." Sharpe, 470 U.S. at 686, 105 S.Ct. 1568.
{18} A police officer may approach an individual and ask him a moderate number of questions in order to investigate possible criminal behavior when the officer has a reasonable suspicion that the law has been or is being violated. See State v. Taylor, 1999-NMCA-022, ¶ 7, 126 N.M. 569, 973 P.2d 246. When determining when an investigatory stop is permissible, we evaluate the "government's justification for the detention, the character of the intrusion on the individual, the diligence of the police in conducting the investigation, and the length of the detention." Robbs, 2006-NMCA-061, ¶ 21, 139 N.M. 569, 136 P.3d 570. "The determination of whether reasonable suspicion justifies a detention depends both on the probativeness of the articulable suspicious circumstances and the extent of the intrusion." State v. Duran, 2005-NMSC-034, ¶ 38, 138 N.M. 414, 120 P.3d 836 (internal quotation marks and citation omitted).
*541 The Character of the Intrusion Continually Escalated
{19} Immediately upon getting Defendant and Wise out of the car, Officer Borunda asked Wise if there was anything in the car. This is permissible, so long as the questioning of the passenger of a car is related to her being implicated in the reason for the stop. Id. ¶ 37. Upon receiving a negative answer, one of the officers asked for and received consent to search the car and did so, finding nothing. After these negative results, the officers separated Defendant and Wise, based on a look that Wise gave to Officer Borunda, and because they "wanted to investigate the matter more" based on Detective Porter's observations that illegal drug trafficking had taken place. The only conclusion to be drawn from the record is that Officer Borunda, lacking further suspicion or probable cause to arrest, further detained Defendant and Wise in the hope of developing further suspicion or probable cause to justify his actions or Detective Porter's suspicions. See State v. Bedolla, 111 N.M. 448, 452, 806 P.2d 588, 592 (Ct.App. 1991) ("The inescapable conclusion to be drawn from the record is that the officers, . . . seized, detained and transported [the defendant] . . . in the hope of developing probable cause or obtaining a consent to search.").
{20} We have previously viewed removing a person from the car, subjecting him to being' frisked for weapons and asking for consent to search, as an escalation of the intrusion inherent to a traffic stop. State v. Prince, 2004-NMCA-127, ¶ 21, 136 N.M. 521, 101 P.3d 332 (holding such behavior to be an illegal expansion of a lawful traffic stop to perform an unrelated drug investigation). We have also held that an investigatory detention can ripen into a "de facto" arrest, necessitating probable cause. Hernandez, 1997-NMCA-006, ¶¶ 22, 27, 122 N.M. 809, 932 P.2d 499.
{21} Frisking Defendant for weapons or conducting a "protective sweep" in the meantime represents an escalation of constitutionally permissible intrusive nature of police behavior, see e.g., State v. Garcia, 2004-NMCA-066, ¶ 28, 135 N.M. 595, 92 P.3d 41, aff'd in part, rev'd in part, 2005-NMSC-017, 138 N.M. 1, 116 P.3d 72, since such a search must be based upon a "sufficient degree of articulable suspicion" that the subject is a threat to officer safety by being both armed and presently dangerous; merely suspecting that either one or the other (armed or dangerous) is a factor is insufficient. State v. Vandenberg, 2003-NMSC-030, ¶ 22, 134 N.M. 566, 81 P.3d 19. No evidence exists here to establish that any officer considered Defendant a threat. Defendant was nevertheless immediately searched for weapons after he exited the car.
{22} Both Defendant and Wise were given Miranda warnings, which are normally not required for an investigative detention. State v. Javier M., 2001-NMSC-030, 131 N.M. 1, 33 P.3d 1; Wilson, 2007-NMCA-111, ¶ 20, 142 N.M. 737, 169 P.3d 1184. We can see the administration of Miranda warnings as officers being careful that when they "take highly intrusive steps to protect themselves from danger, they must similarly provide protection to their suspects by advising them of their constitutional rights." Wilson, 2007-NMCA-111, ¶ 20, 142 N.M. 737, 169 P.3d 1184 (internal quotation marks and citation omitted).
{23} Our Supreme Court has held that even with consent, further detention after a traffic stop to await a drug dog sniff for drugs, was an impermissible extension in time of a suspect's detention, tainting both the consent and the evidence obtained from the resulting search. Neal, 2007-NMSC-043, ¶¶ 35-36, 142 N.M. 176, 164 P.3d 57. Interestingly, the dissent in that case pointed out that a drug dog constitutes a lesser intrusion than a full search of the interior of a car, in contrast to this case, where the more intrusive option was taken by the police. Id. ¶ 43 (Bosson, J., dissenting).
{24} All of the actions of the officers after searching Defendant and his car were an escalation from the "brief," "minimal" nature of a typical investigatory stop. In this case, prior to separating Defendant and Wise, a full search of the car had already occurred, producing "no drugs. At this point, and based on their desire to "investigate more" dependent upon Detective Porter's observations, *542 the officers intended to continue their investigation. At this point, the stop ceased to be consensual, because Defendant was not free to leave. Prince, 2004-NMCA-127, ¶ 11, 136 N.M. 521, 101 P.3d 332. The decision to separate Wise from Defendant and begin a conversation with her about "what they were doing in the parking lot over there" was based on no new suspicion. It was directed at further investigationgeared to digging deeper into the sole suspicion under which Officer Borunda operated involving a drug transaction. Without having produced any evidence to corroborate Detective Porter's inferences from his surveillance, we conclude that the officers were left with no further justification for detaining Defendant and Wise.
The Activities Must Be Only What is Needed To Verify or Quell Suspicion
{25} There was only one operative suspicion in the officers' minds, specifically that the car and its occupants had been involved in a drug transaction. No other possible crime was ever mentioned, nor was the car stopped for a valid traffic stop. For an investigatory detention to pass constitutional muster, it must be brief. Sharpe, 470 U.S. at 685-86, 105 S.Ct. 1568. An investigatory detention "usually involves no more than a very brief detention without the aid of weapons or handcuffs, a few questions relating to identity and the suspicious circumstances, and an atmosphere that is substantially less police dominated than that surrounding the kinds of interrogation at issue in Miranda." Wilson, 2007-NMCA-111, ¶ 19, 142 N.M. 737, 169 P.3d 1184 (internal quotation marks and citation omitted). Officers are entitled only to "verify or quell the suspicion that prompted the investigatory stop." Taylor, 1999-NMCA-022, ¶ 20, 126 N.M. 569, 973 P.2d 246 (internal quotation marks and citation omitted).
{26} During such a stop, "an officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." State v. Gutierrez, 2007-NMSC-033, ¶ 29, 142 N.M. 1, 162 P.3d 156 (internal citations and quotations omitted). "[I]f the answers do not provide the officer with probable cause justifying an arrest, the person being detained must be released." Id. Such investigations "should minimize the imposition on privacy and possessory interests protected by the Fourth Amendment." State v. Wagoner, 1998-NMCA-124, ¶ 14, 126 N.M. 9, 966 P.2d 176; State v. Scott, 2006-NMCA-003, ¶ 31, 138 N.M. 751, 126 P.3d 567. Such investigations must also be accomplished by the "least intrusive means reasonably available to verify or dispel the officer's suspicion." Scott, 2006-NMCA-003, ¶ 31, 138 N.M. 751, 126 P.3d 567 (internal quotation marks and citation omitted).
{27} This Court has held that "[c]ontemporaneous or continued investigation beyond the scope of the initial traffic stop is justified only if the officer can articulate specific and particularized factors that give rise to an objectively reasonable suspicion that other criminal activity has been or may be afoot." Prince, 2004-NMCA-127, ¶ 9, 136 N.M. 521, 101 P.3d 332. The same principle can be applied to this case. Granted, the officers were continuing to pursue their initial suspicion, but there are limits to how far that can be done with an investigatory stop. Investigatory detentions are seizures that exist as exceptions to the Fourth Amendment owing to their cursory and brief nature. Werner, 117 N.M. at 317, 871 P.2d at 973. The police action prior to separating Defendant and Wise should have ceased when no evidence was uncovered to justify their suspicions. It was at this point that police reached the point where they were unable to "verify or quell" their suspicions without extending their grasp beyond their constitutional reach. That the police clearly intended further action based only on the original call from Detective Porter is borne out by Officer Borunda's immediately pursuing questioning about what was happening in the parking lot after he led Wise away. Hence, we hold that the investigatory detention was impermissibly prolonged.
{28} While this is not a case like State v. Flares, 1996-NMCA-059, ¶¶ 4, 13, 122 N.M. 84, 920 P.2d 1038, where the defendant and his vehicle were taken from the *543 roadside for a three-hour search after the roadside search turned up nothing, Flores is instructive. In that case, we held that "[o]nce the officers failed to uncover any drugs at the roadside stop, the very rationale for the stop, to verify or quell . . . suspicion was exhausted." Id. ¶ 13 (second alteration in original) (internal quotation marks and citations omitted). We believe that the lesson from Flores is fairly applied in this case: When the permissible things an officer can do in an investigatory stop have been done, extending the intrusion runs afoul of the Fourth Amendment. See Prince, 2004-NMCA-127, ¶ 11, 136 N.M. 521, 101 P.3d 332. Although our case law had extensively analyzed the timing of the stop, in this case, it is the other considerations that persuade us that the detention became unreasonable. See Sharpe, 470 U.S. at 691, 105 S.Ct. 1568 (Marshall, J., concurring) ("[T]he critical threshold issue is the intrusiveness of the seizure." (internal quotation marks and citation omitted)).
{29} "Diligence in conducting an investigation allows a reasonable opportunity to analyze and integrate information received and to consider additional action that may be taken," State v. Williamson, 2000-NMCA-068, ¶ 16, 129 N.M. 387, 9 P.3d 70. The district court specifically found that based on Wise's actions, Officer Borunda would have been "remiss" in not pursuing what else was going on when Wise appeared nervous. Officer Borunda testified that Wise was nervous when she was removed from the car. Based on a look she gave him, he thought she "was afraid of something that I needed to investigate," so he took her aside and asked her about what had happened in the parking lot. Our Supreme Court has held that "fidgety and nervous demeanor" is not enough to create reasonable suspicion. Neal, 2007-NMSC-043, ¶ 29, 142 N.M. 176, 164 P.3d 57.
{30} We also have to consider the government's justification when considering whether the detention was unreasonable. Robbs, 2006-NMCA-061, ¶ 21, 139 N.M. 569, 136 P.3d 570. In doing so, we note that we agree with Justice Marshall's concurring opinion in Sharpe.
Regardless how efficient it may be for law enforcement officials to engage in prolonged questioning to investigate a crime, or how reasonable in light of law enforcement objectives it may be to detain a suspect until various inquiries can be made and answered, a seizure that in duration, scope, or means goes beyond the bounds of Terry cannot be reconciled with the Fourth Amendment in the absence of probable cause.
Sharpe, 470 U.S. at 691, 105 S.Ct. 1568 (Marshall, J., concurring). This case is the portrayal of what Justice Marshall was talking about: a detention based on reasonable suspicion for legitimate government purposes. However, as further indicated by Justice Marshall, Fourth Amendment rights are too sacred to be dismissed solely on the basis of a Fourth Amendment exception: the Terry stop. Id. at 691-92, 105 S.Ct. 1568. "A stop can also be unduly intrusive if the individual is moved or asked to move more than a short distance, if a search is more extensive than necessary to protect the police from an objective fear of danger, or if tactics amounting to custodial interrogation are used." Id. at 692 n. 2, 105 S.Ct. 1568. We believe that the stop in this case exceeded the government's interests and purposes.
{31} To further detain the subjects of the investigation was to extend the government's intrusion beyond the permissible limits imposed by the Constitution. Even viewing the totality of the circumstances in the light most favorable to the district court's findings, further detention was not warranted under the circumstances, and the evidence is the "fruit of the poisonous tree."
CONCLUSION
{32} We reverse the district court's denial of Defendant's motion to suppress. Detaining Defendant beyond what was necessary to quell suspicion that a drug deal had been taking place was impermissible under Fourth Amendment search and seizure jurisprudence. We remand for further proceedings consistent with this opinion.
{33} IT IS SO ORDERED.
WE CONCUR: A. JOSEPH ALARID and MICHAEL D. BUSTAMANTE, Judges.
NOTES
[1] Officer Borunda was completing his training, and was assigned to and riding with a training officer.
[2] Although Defendant refers to Wise as his "wife" in his brief, we are unsure as to their marital status.