# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-033

Filing Date: June 18, 2009

Docket No. 30,897

STATE OF NEW MEXICO,

　　　　Plaintiff-Petitioner,

v.

KAMIL SEWELL,

　　　　Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Richard J. Knowles, District Judge

Gary King, Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Petitioner

McGarry Law Office
Kathleen McGarry
Glorieta, NM

for Respondent

## OPINION

**DANIELS, Justice.**

**{1}**　　In this case we are called upon to determine the Fourth Amendment reasonableness of the length of a detention in the course of an automobile stop to investigate suspected drug trafficking. We conclude that the brief additional time after an unsuccessful car search that the investigating officer spent in talking to a passenger who appeared afraid and indicated she wanted to communicate with the officer privately was justified under the totality of the circumstances. We reverse the Court of Appeals and affirm the district court's denial of Defendant's motion to suppress.

1

## I.     BACKGROUND

{2}    A full understanding of the relevant factual context of the encounter between Defendant and the investigating officers is central to the resolution of this appeal.  The facts were established by the testimony of two police officers at the hearing on Defendant's motion to suppress the fruits of his roadside detention, which included discovery of a bag containing forty-three rocks of crack cocaine, and Defendant's subsequent confession to drug trafficking.

{3}    On Friday, April 9, 2004, vice and narcotics detective Daniel Porter of the Albuquerque Police Department was in an undercover vehicle patrolling the East Central Avenue area of Albuquerque when he saw a woman standing on a street corner whom he knew to be a prostitute.  As he watched her attempting to catch the attention of passing motorists, a Chevrolet truck pulled up next to her.  After the prostitute had a brief conversation with the driver, she climbed into the truck.  The driver pulled back into traffic and made several erratic driving maneuvers into and out of a nearby residential neighborhood, which the detective identified as common evasive efforts to avoid detection in drive-by prostitution encounters.  The detective was familiar with both prostitution and drug trafficking activities, having been involved in more than one hundred criminal investigations and having worked in the same area of town for four years.

{4}    After a few minutes, the truck stopped near a pay phone, where the detective observed the prostitute get out of the truck and make a brief phone call.  The detective believed from the combination of the circumstances that the pay phone stop was a potential call to set up a drug delivery, which he had observed in connection with other vice and narcotics investigations.  The prostitute then returned to the waiting truck, which drove back onto Central Avenue.

{5}    The truck soon stopped in the parking lot at a small shopping plaza, followed by a Cadillac driven by Defendant Kamil Sewell.  The prostitute got out of the truck and climbed into the rear passenger side of Defendant's Cadillac.  In less than a minute, she got out of the Cadillac and climbed back into the passenger side of the truck, after which both the truck and Defendant's Cadillac left the parking lot.  Although Detective Porter had not been able to observe the specifics of what had occurred behind the mirror-tinted windows of Defendant's Cadillac, he determined from the circumstances that a drug transaction probably had taken place.

{6}    In order to protect his undercover status, the detective requested the assistance of a uniformed officer in a marked car to make an investigatory stop of the Cadillac.  Patrol officer Levi Borunda, accompanied by a field training officer, had been listening to Detective Porter's radio transmissions during the earlier surveillance and used his emergency equipment to stop the Cadillac within two to three minutes after it had left the parking lot rendezvous with the prostitute.  Officer Borunda approached the driver's side of the Cadillac

2

as his training officer approached the other side. He asked Defendant, the driver, for his driver's license. After his training officer asked the female passenger in the front seat and her two small children in the back seat to step out of the car, Officer Borunda asked Defendant to do likewise.

**{7}** After the officers received denials from the occupants that there were any drugs in the car, they were given permission to search it. No drugs were found inside the car. However, Officer Borunda testified that he noticed that Defendant's female passenger appeared "very nervous" and "actually appeared afraid," glancing between the officer and Defendant and "trying to indicate that she was afraid of something that [the officer] needed to investigate." The officer separated the two after the car search to talk to her privately. The passenger then told the officer, "I can't talk in front of him," referring to Defendant. After assuring the passenger, "You're safe," Officer Borunda asked her, "What was going on?" The passenger then told him that she and Defendant were "making a crack deal." The officer asked where the drugs were, and she answered that she had the cocaine in her bra.

**{8}** A female officer was then called to the scene to secure the drugs. When the female officer arrived three or four minutes later, the passenger immediately took the cocaine from her bra and handed it to the officer. Defendant and his passenger were then arrested.

**{9}** Detective Porter testified that approximately five minutes transpired between the initial stop of the Cadillac and the passenger's handing over the drugs to the female officer, and Officer Borunda testified that he could not fix a precise duration but the total was "definitely less than ten minutes." Officer Borunda estimated that the time it took for him to talk to the passenger after the car search was between a minute and a minute and a half.

**{10}** After hearing the officer's testimony regarding these facts at a post-indictment suppression hearing, the district court denied Defendant's motion, finding that there was reasonable suspicion to justify the initial stop and that the passenger's behavior justified further inquiry by the officer after the car search. The court observed that the officer would have been "remiss in his responsibilities as a law enforcement officer" if he had not separated the passenger from Defendant to give her a chance to communicate freely to him, noting that the additional amount of time needed to investigate the reason for her behavior was "absolutely minimal," while the potential risk of threat or harm to her "could be great." Defendant entered a conditional no contest plea to one count of repeat offender trafficking in cocaine and one count of child abuse, preserving the right to appeal the district court's denial of his motion to suppress.

**{11}** The Court of Appeals reversed the district court's suppression order. *State v. Sewell*, 2008-NMCA-027, ¶ 1, 143 N.M. 485, 177 P.3d 536. While the Court did not decide the lawfulness of the initial stop, it held that the continuation of the stop during the time it took to talk to the passenger privately was unreasonable under the Fourth Amendment. *Id.* ¶¶ 14-16, 32. We granted the State's petition for writ of certiorari.

3

## II.      STANDARD OF REVIEW

**{12}**    A decision to suppress evidence obtained from a warrantless search is reviewed as a mixed question of fact and law. *State v. Rowell*, 2008-NMSC-041, ¶ 8, 144 N.M. 371, 188 P.3d 95. "[W]e review any factual questions under a substantial evidence standard and we review the application of law to the facts de novo." *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57 (internal quotation marks and citation omitted). We first review the facts found by the district court, "recognizing that the district court has the best vantage from which to resolve questions of fact and to evaluate witness credibility." *Id.* Accordingly, "we review the facts in the light most favorable to the prevailing party, deferring to the district court's factual findings so long as substantial evidence exists to support those findings." *Id.*; *see State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. We then review the application of the law to those facts, making a de novo determination of the constitutional reasonableness of a search or seizure. *State v. Hand*, 2008-NMSC-014, ¶ 6, 143 N.M. 530, 178 P.3d 165.

## III.     DISCUSSION

### A.      Legality of the Initial Stop.

**{13}**    Consistent with the reasonableness requirement of the Fourth Amendment, "police officers may stop a person for investigative purposes where, considering the totality of the circumstances, the officers have a reasonable and objective basis for suspecting that particular person is engaged in criminal activity." *State v. Werner*, 117 N.M. 315, 317, 871 P.2d 971, 973 (1994) (relying on *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny) (internal quotation marks and citation omitted). A valid investigatory stop allows an officer to detain suspects briefly to verify or quell that suspicion. *Id.*

**{14}**    Defendant appealed and briefed both the district judge's decision that the initial stop was lawful and the judge's decision that the officers did not impermissibly prolong the stop by taking the time to speak privately with the passenger. The Court of Appeals appears to have believed that Defendant's arguments in the alternative may have meant that he had abandoned his challenge to the lawfulness of the initial stop. *See Sewell*, 2008-NMCA-027, ¶ 14 ("Defendant assumes in his brief that the stop of his car was reasonable, arguing only that the scope of the stop exceeded its initial basis."). Defendant strenuously argues that the Court of Appeals misinterpreted what were meant to be arguments in the alternative, and the State agrees in its briefing before this Court that "[t]he [o]pinion was mistaken in that respect." Although Defendant has requested that this Court address the reasonable suspicion issue on the merits, neither party has properly brought it before us for review on certiorari. Our grant of certiorari was limited to the State's request that we review the issues involved in the Court of Appeals' determination that the officers unreasonably extended the roadside detention after the car search for the period of time it took to talk to the passenger in private. "Under the appellate rules, it is improper for this Court to consider any questions except those set forth in the petition for certiorari." *Fikes v. Furst*, 2003-NMSC-033, ¶¶ 8-9, 134

4

N.M. 602, 81 P.3d 545 (citing Rule 12-502(C)(2) NMRA). *But see State v. Javier M.*, 2001-NMSC-030, ¶ 10, 131 N.M. 1, 33 P.3d 1 (allowing review of "foundational issue[s] which [are] integral to a complete and thorough analysis of the specific question presented in the petition for writ of certiorari"). We agree with the State that we are bound by the posture in which the case comes before us on certiorari from the Court of Appeals, taking as a given that the initial stop was lawful and focusing on the issue of whether the investigatory detention was impermissibly expanded. Nothing in this opinion should therefore be interpreted as taking any position on either the legality of the stop or any purported abandonment of the issue, and we leave it to the parties and the Court of Appeals to address those questions on remand.

**B.      Legality of the Length and Scope of the Detention**.

**{15}**      This Court recently discussed in considerable detail the limitations imposed by the Fourth Amendment on the scope and length of an investigatory detention. *State v. Funderburg*, 2008-NMSC-026, 144 N.M. 37, 183 P.3d 922. We note that the Court of Appeals did not have the benefit of *Funderburg* at the time it issued its opinion in this case, which was filed three months before *Funderburg*. Although we need not repeat here all that is contained in the extended *Funderburg* analysis, we will summarize the basic principles set out in *Funderburg* and other controlling precedents that are applicable to determining the constitutional reasonableness of the length and scope of a lawful investigatory stop.

**{16}**      We start with the underlying constitutional maxim that the reasonableness of the officer's actions is determined by objectively evaluating the particular facts of the stop within the context of all the attendant circumstances. *State v. Duran*, 2005-NMSC-034, ¶¶ 23, 35, 138 N.M. 414, 120 P.3d 836. "The federal and New Mexico Constitutions are not a guarantee against all searches and seizures, only unreasonable ones." *Rowell*, 2008-NMSC-041, ¶ 29. Although Defendant would not have standing to object to an unlawful seizure from another person because it violated the other person's rights, he does have standing to object to a seizure "from a third person" which occurred "as a result of the exploitation of Defendant's own unlawful . . . detention." *State v. Hernandez*, 1997-NMCA-006, ¶ 17, 122 N.M. 809, 932 P.2d 499 (filed 1996) (holding a driver had standing to suppress the drugs found in the underwear of the driver's passenger during an unreasonably prolonged roadside stop of both driver and passenger).

**{17}**      A court should consider both the length of the detention and the manner in which it is carried out when determining whether a lawfully-initiated investigatory detention has become unlawfully extended. *Duran*, 2005-NMSC-034, ¶ 35. We first address briefly the overall length of the detention, from initial stop to discovery of the drugs, which was described as five minutes by one of the officers and definitely less than ten minutes by the other. While there is no bright-line time limit for a reasonable investigatory detention, we have found no reported case in which a New Mexico court has ever held that a ten minute detention was impermissibly long in any set of circumstances where there was reasonable suspicion to make a roadside drug stop. *See, e.g.*, *Werner*, 117 N.M. at 318, 871 P.2d at 974

(providing forty-five minute detention unreasonable under circumstances); *State v. Pacheco*, 2008-NMCA-131, ¶¶ 21, 22, 25, 145 N.M. 40, 193 P.3d 587 (summarizing New Mexico cases and upholding reasonableness of thirty minute detention under circumstances); *State v. Robbs*, 2006-NMCA-061, ¶ 31, 139 N.M. 569, 136 P.3d 570 (upholding reasonableness of forty minute detention); *State v. Flores*, 1996-NMCA-059, ¶¶ 12-13, 122 N.M. 84, 920 P.2d 1038 (determining first hour at roadside detention reasonable, relocation to warehouse for additional two to three hour detention unreasonable); *State v. De Jesus-Santibanez*, 119 N.M. 578, 582, 893 P.2d 474, 478 (Ct. App. 1995) (upholding reasonableness of twenty minute detention).

**{18}**    Temporal duration is neither the controlling nor the only factor to be considered in assessing the reasonableness of the extent of an investigatory detention. In this case, the Court of Appeals expressed no criticism of the events during the five minutes or less that it took to stop the car and conduct an initial search; instead, it focused on the purpose for the officer's talking to the passenger during the sixty to ninety seconds after the car search was completed. *Sewell*, 2008-NMCA-027, ¶¶ 19, 24, 27. Even where an initial stop was justified, the detention "may become unlawful if the officer unjustifiably expands the scope of the detention or, without a valid factual basis, makes inquiries about other criminal activity unrelated" to the original justification for the stop. *Funderburg*, 2008-NMSC-026, ¶ 14.

**{19}**    *Funderburg* emphasized that an officer does not have to ignore new information that becomes known to him after the initial stop. *Id.* ¶ 27.

> [W]hen considering whether a detention is reasonably related in scope to the circumstances of the case, a reviewing court must consider whether the officer's subsequent actions were fairly responsive to the emerging tableau—the circumstances originally warranting the stop, informed by what occurred, and what the officer learned, as the stop progressed.

*Id.* (internal quotation marks and citations omitted).

**{20}**    In this case, the purpose of the stop was to investigate whether the occupants of the Cadillac had just participated in a drug transaction. The questions the officers addressed to the occupants and their search of the car were all focused on finding evidence related to drug trafficking. The officers' actions up to the point of speaking separately with the passenger undeniably were "reasonably related to the circumstances that initially justified the stop." *Werner*, 117 N.M. at 317, 871 P.2d at 973.

**{21}**    The Court of Appeals seemed to view anything occurring after the brief unsuccessful search of the car as being unjustified by the reasonable suspicion that made the investigatory stop lawful. *Sewell*, 2008-NMCA-027, ¶ 27. In essence, the Court determined that the police were required as a matter of law to abruptly end the investigatory encounter the second the unsuccessful car search was completed, because taking even a minute or so to

find out what the passenger was trying to communicate to the officers would violate Defendant's constitutional rights. There are two reasons why that analysis is flawed.

**{22}** First, there is nothing in the record that indicates the officers were finished with their "minimally intrusive questions to confirm or dispel [their] initial suspicion," *Funderburg*, 2008-NMSC-026, ¶ 27 (internal quotation marks and citation omitted), particularly in light of the passenger's indication that she had something she wanted to tell the very officers who had told her they were actively looking for drug evidence. The permissive scope of these on-the-scene investigatory stops simply cannot be sliced as finely as the Court of Appeals approach would require, as we have previously indicated in our case law. We have repeatedly required an examination of the "evolving circumstances facing an officer" instead of a mechanical set of rigid guidelines. *Id.* ¶ 26. Numerous precedents of the Court of Appeals have recognized and applied that same principle. *See, e.g.*, *Pacheco*, 2008-NMCA-131, ¶ 24 (stating officers not necessarily required to stop roadside drug investigation immediately after drug-sniffing dog failed to alert); *Robbs*, 2006-NMCA-061, ¶¶ 24-25 (stating officers not required to cease investigation when initial investigatory inquiries did not dispel officers' reasonable suspicions); *State v. Williamson*, 2000-NMCA-068, ¶ 16, 129 N.M. 387, 9 P.3d 70 (stating officer not required to cease the investigation abruptly after unsuccessful initial results because "[d]iligence in conducting an investigation allows a reasonable opportunity to analyze and integrate information received and to consider additional action that may be taken").

**{23}** Second, by basing its holding on the proposition that the only reason for talking to the passenger after the car search was "in the hope of developing further suspicion or probable cause to justify [the officers'] actions or . . . suspicions," *Sewell*, 2008-NMCA-027, ¶ 19, the opinion below ignores the district judge's explicit and factually supported findings recited from the bench at the conclusion of the hearing. The judge relied on Officer Borunda's testimony in finding that the officer responded to the passenger's indications that she wanted to say something to the officer privately because she was indicating that "she was in fear of" Defendant. As we have repeatedly cautioned, appellate courts, including this Court, "do not sit as trier of fact, recognizing that the district court has the best vantage from which to resolve questions of fact and to evaluate witness credibility." *Neal*, 2007-NMSC-043, ¶ 15. In this case, the district judge did not even have to make evidentiary inferences in arriving at his findings; they were based directly on the explicit sworn testimony of the officer.

**{24}** We agree with the district court that it would have been inappropriate and unreasonable had the officers "close[d] their eyes and plug[ged] their ears to anything else" immediately following the vehicle search, given the passenger's demeanor. In separating Defendant and the passenger in order to assure her of her safety and ask what was happening, Officer Borunda took the only reasonable action he could have taken to dispel reasonable concerns raised by the passenger's fearful conduct and her attempt to communicate something to him.

**{25}** In *Funderburg*, we articulated what is ultimately the dispositive question in this case: "In weighing the officer's intrusion on Defendant's privacy, we should ask ourselves what other actions a reasonable officer would be expected to take under similar circumstances, if not those taken in this instance." *Funderburg*, 2008-NMSC-026, ¶ 32. Two years before that question was posed by this Court, the district court in this case answered it in summing up his findings at the conclusion of the suppression hearing: "I think he would have been remiss in his responsibilities as a law enforcement officer not to separate and find out what was going on." We agree with that answer, and the Fourth Amendment to the Constitution imposes no demand that we answer the question any differently.

## IV.    CONCLUSION

**{26}** We affirm the district court's determination that the officers did not unreasonably extend their investigatory stop. We reverse the contrary decision of the Court of Appeals and remand to that Court for its consideration of any preserved issues it has not yet addressed.

**{27}    IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

**Topic Index for *State v. Sewell*, No. 30,897**

**AE**              **APPEAL AND ERROR**

AE-SA            Standing to Appeal

**CT**              **CONSTITUTIONAL LAW**

CT-FA     Fourth Amendment
CT-SD     Standing
CT-SU     Suppression of Evidence

**CA**      **CRIMINAL PROCEDURE**

CA-IS     Investigatory Stop
CA-SZ     Search and Seizure
CA-WS     Warrantless Search

**EV**      **EVIDENCE**

EV-SU     Suppression of Evidence