This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.	**NO. 26,742**

**KAMIL SEWELL,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Richard Knowles, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

Joel Jacobsen, Assistant Attorney General
Albuquerque, NM

for Appellee

McGarry Law Office
Kathleen McGarry
Glorieta, NM

for Appellant

**MEMORANDUM**

**KENNEDY, Judge.**

After the district court denied his motion to suppress, Defendant Kamil Sewell pleaded no contest to repeat offender trafficking in cocaine and child abuse, preserving his right to appeal. Without reaching the merits of whether the initial police stop was reasonable, this Court reversed the district court's order. *State v. Sewell*, 2008-NMCA-027, ¶ 1, 143 N.M. 485, 177 P.3d 536, *rev'd* 2009-NMSC-033, ¶¶ 14, 26, 146 N.M. 428, 211 P.3d 885. On remand, we now consider the facts surrounding that initial stop and hold that it was based on reasonable suspicion of criminal activity. We hold that investigatory stops of vehicles are governed by the same reasonable suspicion standard as stops of persons. We affirm.

**BACKGROUND**

We recount only those facts necessary to analyze the issue before us. A more detailed recitation of the facts and procedural history of this case may be found in *Sewell*, 2009-NMSC-033, ¶¶ 2-11.

On April 9, 2004, an undercover Albuquerque police officer identified a woman he knew to be a prostitute standing near a street corner along Central Avenue. *Id.* ¶ 3. The officer had been patrolling in that area for more than four years, was familiar with drug trafficking and prostitution investigations, and had participated in more than one hundred criminal cases at the time. *Id.* As he continued to observe, the prostitute attempted to catch the attention of passing vehicles until a Chevrolet truck stopped nearby. She then engaged in a conversation with the driver of the truck and entered

on the truck's passenger side. *Id.* As the truck drove away with the prostitute inside, the officer noted that it made several suspicious maneuvers into and out of a residential neighborhood. He testified that this behavior is fairly typical of persons attempting to evade law enforcement in drive-up prostitution cases. *Id.*

The truck soon stopped by a pay phone, where the prostitute got out and made a short call. When the call was finished, she immediately got back in, and the truck drove away. *Id.* ¶ 4. The officer testified that in his experience with other drug and prostitution cases, such a call was likely a signal intended to set up a narcotics transaction. *Id.* The truck soon stopped again, this time at a nearby shopping plaza, where it was met by a Cadillac driven by Defendant. *Id.* ¶ 5. The prostitute exited the truck, got into Defendant's Cadillac, and in less than one minute, came back to the truck. *Id.* Both vehicles then drove away. The officer did not see what took place inside the Cadillac, but based on his experience, he concluded he had just witnessed a drug transaction. *Id.* In order to keep from compromising his undercover status, the officer notified a uniformed police unit of what he had just seen. *Id.* ¶ 6. Within two to three minutes, police stopped Defendant's Cadillac, questioned Defendant and his passenger, and conducted a search that revealed narcotics and eventually led to this appeal. *Id.* ¶¶ 6, 7-9.

**STANDARD OF REVIEW**

2

Suppression orders present mixed questions of law and fact. *State v. Rowell*, 2008-NMSC-041, ¶ 8, 144 N.M. 371, 188 P.3d 95. Factual questions are reviewed for substantial evidence, and the district court's application of law to those facts is reviewed de novo. *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. We first view the facts in the light most favorable to the prevailing party, deferring to the district court's factual findings so long as substantial evidence exists to support them. *Id.* Next, we analyze how the court applied the law to those facts and make a de novo conclusion as to whether the stop was constitutional. *State v. Hand*, 2008-NMSC-014, ¶ 6, 143 N.M. 530, 178 P.3d 165.

**ANALYSIS**

Without probable cause for an arrest, a police officer may conduct an investigatory detention upon a citizen when the officer possesses reasonable and articulable suspicion to believe "that criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). In determining whether an officer had such reasonable suspicion, "the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts." *State v. Watley*, 109 N.M. 619, 624, 788 P.2d 375, 380 (Ct. App. 1989) (internal quotation marks and citation omitted). In order to justify such a stop, the State must be able to point to "specific and articulable facts," and rational inferences from those facts,

which would give a reasonable person cause to be suspicious of criminal activity. *Id.*; *see State v. Pallor*, 1996-NMCA-083, ¶ 12, 122 N.M. 232, 923 P.2d 559. In such an inquiry, we make no distinction between stops conducted on vehicles and those conducted of persons on foot. Both require reasonable suspicion. *Compare Watley*, 109 N.M. at 624, 788 P.2d at 380 (discussing reasonable suspicion of a vehicle), *with State v. Cobbs*, 103 N.M. 623, 626, 711 P.2d 900, 903 (Ct. App. 1985) (discussing reasonable suspicion of persons on foot who entered a vehicle and drove away). "Unsupported intuition and inarticulate hunches are" insufficient. *Cobbs*, 103 N.M. at 626-27, 711 P.2d at 903-04.

In this case, substantial evidence supports the district court's finding that police had reasonable suspicion to stop Defendant. As we stated above, the undercover officer observed a woman he knew to be a prostitute attempting to catch the attention of passing vehicles. When she finally succeeded in attracting the driver of a Chevy truck, she got in and rode away. The truck then executed several maneuvers that were consistent with measures used by criminals to avoid detection. Moments later, the truck pulled up to a pay phone, on which the prostitute made a quick call. The truck drove away again, and when it finally stopped, it was met by Defendant's Cadillac. The prostitute exited the truck and entered Defendant's Cadillac. She sat in the Cadillac less than one minute, got out, reentered the truck, and rode away again. The

4

officer who witnessed these events testified they were consistent, in his experience, with a narcotics transaction involving two vehicles in which a prostitute is commonly used as a go-between. In this case, those two vehicles were the truck and the Cadillac, and this fact, when considered alongside the other circumstances known to the officer, created reasonable suspicion to stop either vehicle. We affirm.

**CONCLUSION**

For the reasons set forth herein, we hold that substantial evidence supports the district court's determination that the stop of Defendant's Cadillac was lawful.

**IT IS SO ORDERED.**

 

**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

 

**JAMES J. WECHSLER, Judge**

 

**MICHAEL D. BUSTAMANTE, Judge**