This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellant,**
**v.**
**JEREMIAH ORDONEZ,**
**Defendant-Appellee.**

No. S-1-SC-36123
SUPREME COURT OF NEW MEXICO
April 11, 2019

APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY, Douglas R. Driggers, District Judge

## COUNSEL

Hector H. Balderas, Attorney General, John J. Woykovsky, Assistant Attorney General, Santa Fe, NM, for Appellant

Bennett J. Baur, Chief Public Defender, C. David Henderson, Appellate Defender, Brian Parrish, Assistant Appellate Defender, J.K. Theodosia Johnson, Assistant Appellate Defender, Santa Fe, NM, for Appellee

## JUDGES

JUDITH K. NAKAMURA, Chief Justice. WE CONCUR:  BARBARA J. VIGIL, Justice, MICHAEL E. VIGIL, Justice, PETRA JIMENEZ MAES, Justice, Retired, CHARLES W. DANIELS, Justice, Retired

**AUTHOR:** JUDITH K. NAKAMURA.

## DECISION

**NAKAMURA, Chief Justice.**

**{1}**     The State challenges the district court's decision to suppress Defendant Jeremiah Ordonez's verbal confession.  Finding no error, we affirm.

## I.     BACKGROUND

**{2}**     While already incarcerated at the Metropolitan Detention Center (MDC) for other crimes not relevant here, Ordonez wrote a letter in which he confessed to killing a man several years earlier.  Ordonez mailed the letter to a church it appears he never attended.

**{3}**     The police ultimately obtained the letter and two officers, Deputy Richard Chavez and Detective Robert Nevarez of the Doña Ana County Sheriff's Office, visited Ordonez at the MDC and questioned him.  After the officers advised Ordonez of his *Miranda* rights, he confirmed for the officers what he wrote in his letter:  he shot and killed a man. Ordonez further clarified that the killing occurred in the course of a robbery.  Ordonez was indicted on first-degree felony murder and other charges.

**{4}**     Ordonez was appointed counsel, and counsel asked Dr. William E. Foote to perform a psychological evaluation of Ordonez.  In his report Dr. Foote concluded that Ordonez suffered from mental illness and did not understand his *Miranda* rights or knowingly and intelligently waive them when the officers interrogated him at the MDC.

**{5}**     A few days after Ordonez's counsel received Dr. Foote's report, Ordonez moved to suppress the verbal confession he provided to the officers arguing that they failed to obtain a valid waiver of his *Miranda* rights at the time of the questioning. Ordonez conceded that the officers read him the standard *Miranda* warnings and reviewed the warnings with him.  Nevertheless, Ordonez contended that he had not knowingly and intelligently waived his rights.[1]

**{6}**     The district court agreed, and concluded that Ordonez "did not understand the consequences of his statement or his interrogation, specifically that his statement would be used against him in a court of law" and suppressed the statements Ordonez made during the interrogation.  The propriety of the district court's ruling on Ordonez's suppression motion is now before this Court on interlocutory review.  *See State v. Smallwood*, 2007-NMSC-005, ¶ 11, 141 N.M. 178, 152 P.3d 821 ("[T]he legislature intended for us to have jurisdiction over interlocutory appeals in situations where a defendant may possibly be sentenced to life imprisonment . . . .").

## II.     DISCUSSION

**{7}**     At the outset, we note that the resolution of the issue before us does not require clarification of what, if anything, the officers should have done to comply with *Miranda* given the fact that Ordonez suffers from mental illness.  This case only requires us to apply the principles articulated in *Miranda* and its progeny to the facts presented.  In other words, we treat this matter as a straightforward *Miranda* case.

**{8}**     "[T]he Fifth Amendment has been interpreted as requiring the State, prior to a custodial interrogation of an accused, to advise the accused (1) of the right to remain silent; (2) that any statement made by the accused may be used as evidence against

---

[1]The motion included a host of other arguments that we do not summarize here.

him or her; and (3) of the right to the presence of an attorney, either retained or appointed." *State v. Gutierrez*, 2011-NMSC-024, ¶ 7, 150 N.M. 232, 258 P.3d 1024. Once these warnings have been issued, a defendant may waive these rights. *See State v. Martinez*, 1999-NMSC-018, ¶¶ 13-14, 127 N.M. 207, 979 P.2d 718.

{9}    The United States Supreme Court's case law makes clear that the validity of any waiver turns on a two-fold inquiry:  the waiver must be (1) "voluntary" and also must be (2) "knowing and intelligent." *State v. Fekete*, 1995-NMSC-049, ¶ 49, 120 N.M. 290, 901 P.2d 708.  The Supreme Court has stated this two-part test as follows:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*Id.* (internal quotation marks and citation omitted).  "The prosecution bears the burden of showing by a preponderance of the evidence that a defendant's waiver was knowing and intelligent." *Id.* ¶ 48.

{10}    There is no question Ordonez was advised of his *Miranda* rights.  Additionally, the district court concluded that Ordonez did voluntarily waive his rights, and that conclusion is not challenged.  The district court was not convinced, however, that Ordonez "knowingly and intelligently" waived his rights.  As noted, the court was not convinced that Ordonez understood that the statements he made to the officers could be used as evidence against him in a court of law and suppressed the statements for this reason.  The State contends that this ruling was error.

{11}    According to the State, there is ample evidence in the record that Ordonez did understand that the statements he gave to the officers could be used against him.  The State also emphasizes that Ordonez expected to be charged by confessing and did so for the express purpose of being incarcerated at a federal prison.  According to the State, this suggests that Ordonez must have known that his voluntarily-given statements would be used against him in court.

{12}    The standard of review we apply here is well settled.  "A decision to suppress evidence obtained from a warrantless search is reviewed as a mixed question of fact and law.  We review any factual questions under a substantial evidence standard and we review the application of law to the facts de novo." *State v. Sewell*, 2009-NMSC-033, ¶ 12, 146 N.M. 428, 211 P.3d 885 (alteration, internal quotation marks, and citations omitted).  "[W]e accept the factual findings of the district court unless they are clearly erroneous, and view the evidence in the light most favorable to the district court's ruling." *Martinez*, 1999-NMSC-018, ¶ 15 (internal quotation marks and citation omitted).

{13}    The legal standard the State must satisfy to demonstrate, as a matter of law, that Ordonez's waiver was knowing and intelligent is identified in our case law.  We

"evaluate the totality of the circumstances and the particular facts, including consideration of the mental and physical condition, background, experience, and conduct of the accused, as well as the conduct of the police, in determining whether the State has successfully carried its burden in demonstrating a knowing and voluntary waiver." *Id.* ¶ 14 (internal quotation marks and citation omitted). "Every reasonable presumption against waiver is indulged." *Id.* (alteration, internal quotation marks, and citation omitted). Considered collectively, our standard of review and the governing legal standard require the State to demonstrate that, given the totality of the circumstances presented to the district court, it made a clear error when it determined that the State failed to prove by a preponderance of the evidence that Ordonez understood that the statements he made to the officers could be used against him in court. For the reasons set out below, the State cannot make this showing.

**{14}** Deputy Chavez initially testified—when questioned by the State on direct examination—that he believed Ordonez did understand the *Miranda* warnings when Detective Nevarez read them to him at the beginning of the interrogation. Deputy Chavez nevertheless freely and openly acknowledged that Ordonez demonstrated confusion from the very beginning of the interrogation.

| | |
|---|---|
| Prosecutor: | [W]as there time that was taken to explain the *Miranda* warnings in detail to the defendant? |
| Deputy Chavez: | Yes. |
| Prosecutor: | Did he have certain questions about them or need some clarification with respect to the *Miranda* warnings? |
| Deputy Chavez: | He did. |
| Prosecutor: | Will you please describe that to Judge Driggers. |
| Deputy Chavez: | I believe there was—there seemed to be a little bit of confusion as far as—I believe the word he used was "waivering." However, that was clarified by myself and Investigator Nevarez so that he understood what it meant for him to waive his right to an attorney and agree to speak to us in reference to the case. |

The confusion surrounding the word "waiver" that Deputy Chavez identifies is significant and requires explanation. As will become clear, that confusion was not remedied (despite Deputy Chavez's claim to the contrary) and contributes meaningfully to our conclusion that the *Miranda* warning given here was ineffective.

**{15}** At the beginning of the interrogation, Ordonez was read his *Miranda* rights and was then provided a card he was asked to read aloud. The words on the card indicated that Ordonez understood his rights, wished to waive them and speak with the officers, knew what he was doing in electing to speak, and had not been induced to speak by threats or promises. After Ordonez finished reading the card, Detective Nevarez asked him "Do you understand that waiver?" Ordonez responded "Uh, kinda sort of yeah."

Given this uncertain response, Detective Nevarez sought clarification. He explained to Ordonez that the words on the card meant that Ordonez understood his rights and understood that he could speak to an attorney before he spoke with them. After offering this incomplete point of clarification, Detective Nevarez again asked Ordonez "Do you understand?" Ordonez responded "Yeah." Detective Nevarez then asked "Do you wish to talk to us at this time?" Ordonez answered "Yeah, I don't want to waiver." For reasons discussed immediately below, this response is plainly equivocal.

**{16}** The words "waiver" and "waver" are nearly identically spelled, have identical pronunciations, yet have distinct meanings. The only reason Ordonez is quoted as having used the word "waiver" with an "i" in the crucial quote "Yeah, I don't want to waiver" is because the individual who transcribed the interrogation assumed Ordonez used the word "waiver" and, therefore, elected to spell the word Ordonez used this way. This is not to say that the transcriber erred; Ordonez's response could be construed as a statement that he did not want to "waive" his rights. Alternatively, the statement could be construed to mean that Ordonez was not "wavering" from his decision to waive his rights and speak with and confess to the officers. In the exchanges immediately following Ordonez's equivocal use of the word "wa(i)ver," he informed the officers that "I want to exercise my rights" and "at this time would like to talk"; that he would like "access to a legal library" during his "charges" and "trial," but would like to "self represent myself" later on; and he declined to sign the waiver-of-rights form the officers presented to him because he was not "wa(i)vering." Thus, while Officer Chavez expressed confidence that any confusion that stemmed from Ordonez's puzzling use of the word "wa(i)ver" was rectified, this statement is not to be credited as we must view the evidence in the light most favorable to the district court's decision. *Martinez*, 1999-NMSC-018, ¶ 15.

**{17}** Viewing the record in that light, it is clear that the officers did not adequately rectify the confusion that took hold early in the interrogation. In fact, defense counsel's cross-examination of Deputy Chavez revealed that Deputy Chavez himself doubted that Ordonez understood his rights and specifically doubted that Ordonez understood that any statements he made could be used against him in court.

**{18}** Defense counsel asked Deputy Chavez whether it was fair to infer that Ordonez understood his rights given his response "Uh, kinda sort of yeah" when asked if he understood the *Miranda* warning and given his response "I don't want to waiver" when asked whether he wished to speak to the officers at that time. Deputy Chavez responded "No, sir." Deputy Chavez went on to acknowledge, at other points during cross-examination, that there were other reasons to suspect Ordonez was not adequately informed that his statements (to the extent he wished to make any) could be used against him in court, and that it would have been preferable to obtain clarification from Ordonez that he did in fact understand this aspect of the *Miranda* rights. One such instance occurred during the following exchange:

| Deputy Chavez: | Investigator Nevarez asked, "But at this time, do you wish to talk to us?" Mr. Ordonez says, "Sure, why not?" Investigator |

| | |
|---|---|
| | Nevarez said, "Without an attorney present?" Mr. Ordonez said, "Sure, why not?" |
| Defense Counsel: | At this point, okay, he's saying, "Sure, why not?" Okay. Is he ever reminded of the implications of talking to you guys when he says, "Sure, why not?" Is he reminded? |
| Deputy Chavez: | No, he's not reminded after the initial on page one. No, sir. |
| Defense Counsel: | A response to that question, "Sure, why not?" should have been . . . "Well, because what you say could be used against you in a court of law." . . . That should have been the response. |
| Deputy Chavez: | I can't tell you what Investigator Nevarez should have said at that point. I'm not Investigator Nevarez. |
| Defense Counsel: | What would you have said at that point? You were there. |
| Deputy Chavez: | Again, I would have wanted explicit clarification as to whether or not Mr. Ordonez wanted to waive his rights and agree to speak to me, or whether or not he was exercising his rights. That's just—again, that's my personal preference. |

In another exchange, Deputy Chavez conceded that, after Ordonez exhibited confusion about his rights, the officers failed to clarify whether Ordonez actually understood that any statements he made could be used against him in court.

Deputy Chavez:     I say, "You're saying you want to talk to us about this letter, and you don't want an attorney with you right now. That's what you're saying." Mr. Ordonez says, "That's what I'm saying that I want?" I say, "Yes." Investigator Nevarez said, "That's what the signing represents."

| | |
|---|---|
| Defense Counsel: | Let me stop you there. Is that all that signing represents, that he can have an attorney? |
| Deputy Chavez: | No. |
| Defense Counsel: | What else does it represent? |
| Deputy Chavez: | Well, that encompasses that he understands in its entirety the *Miranda* warning. And it's not a card; it's actually a full piece of—it should be a full piece of paper that he read and that Investigator Nevarez reads to him. |
| Defense Counsel: | But in any event, it doesn't just mean that he can have an attorney with him right now? |
| Deputy Chavez: | That's correct. |
| Defense Counsel: | It doesn't just mean that he can stop questioning at any point right now? |
| Deputy | That's correct. |

| | |
|---|---|
| Chavez: | |
| Defense Counsel: | It includes the right to understand that what he says can be used against him in court? |
| Deputy Chavez: | Yes, sir. |
| Defense Counsel: | But that's not gone over with him, is it? |
| Deputy Chavez: | It was gone over initially. |
| Defense Counsel: | Initially? |
| Deputy Chavez: | On page one, yes. |
| Defense Counsel: | But after he shows signs of confusion, you don't revisit it with him, do you? |
| Deputy Chavez: | No, sir. |

After eliciting this response, defense counsel further questioned Deputy Chavez about whether he and Detective Nevarez had really done enough to ensure that Ordonez understood all of the *Miranda* rights. As the following exchange makes clear, Deputy Chavez conceded that they had not.

| | |
|---|---|
| Defense Counsel: | I'd like you to read line one through line nine, please. |
| Deputy Chavez: | Line number one. Investigator Nevarez asked, "That's what the signing represents." I asked—oh, excuse me, I say, "Yes, it's a signature that covers your statement on the tape right here, bro. That's all it is." |
| Defense Counsel: | Let me stop you there. That isn't technically all it is, is it? You're in the moment, you're talking to Mr. Ordonez in an interrogation room, but you say that's all it is. The signing doesn't just represent the stuff we've talked about, that he can have a lawyer and that he can stop the questioning at any point; is that correct? |
| Deputy Chavez: | Yes, that's correct. |
| Defense Counsel: | Okay. So keep reading, please. |
| Deputy Chavez: | Mr. Ordonez says, "Okay, so will write, will sign the right to an attorney, but I get the right to—are these all my rights?" |
| Defense Counsel: | I'll stop you there. So, again, another question that shows that he's seeking information from the two of you about a better understanding of his rights— |
| Deputy Chavez: | Yes. |

| | |
|---|---|
| Defense Counsel: | —is that correct? Okay. And what is Detective Nevarez's response? |
| Deputy Chavez: | Investigator Nevarez says, "The rights that I've read to you on the other side are, you have a right to have an attorney present with you during questioning, and you just told us that you want to speak with us now without an attorney present. And later on, should you decide you want an attorney, you have a right—or excuse me, you have that right as well." |
| Defense Counsel: | Okay. The rights on the other side, does it encompass just the right to have an attorney? |
| Deputy Chavez: | No, sir. |
| Defense Counsel: | What other rights does it encompass? |
| Deputy Chavez: | All of the rights that were explained to him at the beginning, at the initial—the actual *Miranda* sheet. |
| Defense Counsel: | So, again, Detective Nevarez does not get into these further rights with Mr. Ordonez? |
| Deputy Chavez: | He does not. |
| Defense Counsel: | He stops with the right to counsel? |
| Deputy Chavez: | Yes, sir. |

Deputy Chavez also conceded that Ordonez's apparent confusion and his unwillingness to sign a waiver-of-rights form caused him concern regarding Ordonez's understanding of his rights.

| | |
|---|---|
| Defense Counsel: | Please keep reading at 10. |
| Deputy Chavez: | Mr. Ordonez says, "Well, I want to—I want to represent"—or excuse me—"I want to self-represent myself." Investigator Nevarez says, "Okay. And that's what you're doing right now, then." Mr. Ordonez says, "Okay. Well, I—we could just skip all of this waiver stuff, and I'll go ahead and talk." |
| Defense Counsel: | Let me stop you right there. I think you've said earlier that you would rather be more explicit than just this? |
| Deputy Chavez: | Yes, sir. |
| Defense Counsel: | Is this another example, Deputy, where you would want to be more explicit with a subject that you were interrogating in advising the subject of his rights? |
| Deputy Chavez: | Personally, yes. |
| Defense | But that doesn't happen, does it? |

| Counsel: | |
|---|---|
| Deputy Chavez: | No, sir. |
| Defense Counsel: | What's the next thing that Detective Nevarez says? |
| Deputy Chavez: | Investigator Nevarez asked, "Go right into it, okay." |
| Defense Counsel: | Okay. So he doesn't get into it. He doesn't give a further explanation to ascertain if Mr. Ordonez understands, does he? |
| Deputy Chavez: | No. |
| Defense Counsel: | He stops right there, and that's where you get right into it. And then what does Mr. Ordonez say? |
| Deputy Chavez: | Mr. Ordonez says, "Yeah, cause I don't feel comfortable signing this right now." |
| Defense Counsel: | Okay. He didn't feel comfortable signing it? |
| Deputy Chavez: | No, he didn't. |
| Defense Counsel: | And yet Detective Nevarez moves on, doesn't he? He goes into the questioning? |
| Deputy Chavez: | Yes. |
| Defense Counsel: | And is this another example where if you were the lead on this, where you would want to get into it a little more with the subject if you heard the subject say, ["]Yeah, 'cause I don't feel comfortable signing this right now"? |
| Deputy Chavez: | Yes. Personally, I would have addressed that a little bit further, although, I mean, it's not necessary. |

**{19}**   These concessions and acknowledgments more than adequately support the district court's finding that Ordonez did not understand that his statements could be used against him when he purportedly waived his rights and spoke to the officers. Deputy Chavez expressed doubt about whether Ordonez understood that his statements could be used against him in court and questioned (more generally) whether Ordonez understood his rights. While it is true that Ordonez was initially informed that his statements could be used against him, Deputy Chavez acknowledged that he and Detective Nevarez never revisited this particular aspect of *Miranda* after Ordonez expressed general confusion about his rights. Our review of the transcript of the interrogation confirms that Deputy Chavez is correct. After Ordonez confessed and the officers once more addressed the *Miranda* rights with him, they did not revisit the fact that Ordonez's statements could be used against him in court.

**{20}**   Throughout its brief in chief, the State emphasizes other evidence that suggests that Ordonez did understand that any statements he elected to make could be used against him. We acknowledge that there is competing evidence in this case and that,

had the district court ruled in the State's favor below, the result of this appeal could possibly be different. But the State did not prevail below, and because there is substantial evidence to support the district court's findings and because its findings are not clearly erroneous, the State's fact-based arguments gain no traction. *See State v. Ortiz*, 2017-NMCA-006, ¶ 24, 387 P.3d 323 ("We will not second guess the fact-finder's decision concerning the credibility of witnesses or substitute our judgment for that of the fact-finder.").

**{21}** The State contends that the district court's findings are clearly erroneous because logic dictates that Ordonez must have understood that any statements he made to the officers would be used against him in court because Ordonez knew that he would be charged as a consequence of his confession and confessed in order to ensure that he would be incarcerated at a federal prison. This argument has intuitive appeal—if Ordonez knew speaking to the officers would secure his imprisonment, he must have known that his statements would be used against him in court. But this argument fails upon closer scrutiny.

**{22}** It is, of course, untrue that Ordonez's decision to speak with the officers assured him a place in federal prison. In fact, it is entirely unclear how Ordonez's decision to confess to a violation of New Mexico law to state law enforcement officers could possibly ensure Ordonez's transfer to or incarceration within a federal prison. In fact, Ordonez's decision to speak to the officers exposed him to a host of consequences (that cannot be fully predicted) including the possibility that Ordonez might face additional incarceration at the MDC to await trial for the shooting murder to which he confessed to Detective Nevarez and Deputy Chavez. This possibility is laced with irony as Ordonez wrongly assumed that confessing would somehow expedite his departure from the MDC.

**{23}** For these reasons, it is not true that Ordonez *must have understood* that his statements could be used against him in court because he believed that his statements would ensure his federal imprisonment. In fact, Ordonez's belief that speaking to the officers would assure him this outcome suggests, if it suggests anything, that Ordonez did not understand what was meant by the warning that any statements Ordonez elected to make could be used against him.

**{24}** This is not to say that the officers were required to advise Ordonez of all the possible consequences that might flow from the decision to waive his rights and speak to them. *Miranda* imposes no such requirement. *Gutierrez*, 2011-NMSC-024, ¶ 20. The officers were only required to inform Ordonez with sufficient clarity that his statements could be used against him in court. The district court found that this did not occur and that determination is supported by substantial evidence and is not clearly erroneous.

## III. CONCLUSION

**{25}** The district court's findings were supported by substantial evidence and were not clearly erroneous. Likewise, the court's understanding of the law and its application to the facts presented in this case was not erroneous. The district court's ruling is affirmed.

**{26} IT IS SO ORDERED.**

**JUDITH K. NAKAMURA, Chief Justice**

**WE CONCUR:**

**BARBARA J. VIGIL, Justice**

**MICHAEL E. VIGIL, Justice**

**PETRA JIMENEZ MAES, Justice, Retired, Sitting by designation**

**CHARLES W. DANIELS, Justice, Retired Sitting by designation**